KRESSER v. LYMAN, Commissioner of Excise.

(Circuit Court, N. D. New York. June 24, 1896.)

CONSTITUTIONAL LAW—CONTRACTS BY STATE—POLICE POWER.

It is beyond the power of a state, through its legislature and administrative officers, to enter into a contract hampering the future action of the state, in the exercise of its police power to regulate, restrict, or prohibit the traffic in intoxicating liquors. Accordingly, held, that a license

to sell such liquors, granted February 10, 1896, for one year, pursuant to the New York statute regulating the sale of liquors (Laws 1892, c. 401), did not constitute a contract between the state and the licensee, such that the subsequent act of March 23, 1896 (Laws 1896, c. 112) declaring the license void after June 30, 1896, and requiring the licensee, in common with all other dealers in liquors, to take out a liquor tax certificate and pay a tax, would be void, as to such licensee, as impairing the obligation of a contract, and depriving him of his property without due process of law.

Louis W. Pratt, for complainant.

Mead & Stranahan, for defendant.

WALLACE, Circuit Judge. The plaintiff, having brought suit to restrain, by permanent injunction, the enforcement of the provisions of the act of the legislature of the state of New York, approved March 23, 1896, entitled "An act in relation to the traffic in liquors, for the taxation and regulation of the same, and to provide for local option," commonly known as the "Raines Law," has applied for an injunction pendente lite. His action proceeds upon the theory that the license granted to him February 10, 1896, in consideration of the payment of $200 for the term of one year from that date by the board of excise of the city of Albany, pursuant to authority conferred upon them by chapter 401 of the Laws of the State of New York of 1892, entitled "An act to revise and consolidate the laws regulating the sale of intoxicating liquors," is a contract investing him with the right to conduct the business of a retail dealer in spirituous liquors, wines, ale, and beer at the place specified until the expiration of the term; and that those provisions of the act of 1896 which declare that every license heretofore lawfully granted by a board of excise "shall cease, determine and be void after June 30, 1896," and whereby he and others similarly situated are required to make application for a liquor tax certificate, and pay a tax at the rate of $500 per annum from July 1, 1896, and, in case of default, are liable to arrest by the defendant, as state commissioner of excise, and to fine and imprisonment, are repugnant to the constitution of the United States, and as to him are void, as impairing the obligation of a contract, and depriving him of his property without due process of law. The conclusion that these provisions are not obnoxious to the constitution seems so plain that the objection urged in behalf of the defendant that no special circumstances appear bringing the case within any of the recognized exceptions to the rule that a court of equity will not interfere by injunction to prevent the collection of a tax merely upon the ground of its illegality, or because the statute under which it is imposed is unconstitutional, will not be considered.

The argument for the plaintiff, deduced from a consideration of the various provisions of the pre-existing statutes, that the license granted to him is a contract which cannot be destroyed or impaired by subsequent legislation by the state, and the privilege conferred by it a property right, of which he cannot be deprived without due process of law and just compensation, necessarily assumes the competency of the state, through its legislature and administrative officers, to enter into a contract hampering the future action of the

state, in the exercise of its police power to regulate, restrict, or prohibit the traffic in intoxicating liquors. If this competency is wanting, no form or words, whether expressed in a legislative act or otherwise, can create a valid contract. That the state cannot barter away, or in any manner abridge, any of those inherent powers of government, the complete and untrammeled exercise of which is essential to the welfare of organized society, and that any contracts to that end are void upon general principles, and cannot be protected by the provisions of the national constitution, are propositions which are abundantly settled by the decisions of the highest federal tribunal. Without attempting an extended reference to these adjudications, it will suffice to refer to two decisions of the supreme court of the United States. In Beer Co. v. Massachusetts, 97 U. S. 25, the question was whether, under the prohibitory liquor law of Massachusetts of 1869, the seizure and forfeiture of liquors belonging to the company was lawful, in view of the charter of the company, granted by legislative act in 1828, investing the company with the right to manufacture and sell such liquors; the contention being that the subsequent act impaired the obligation of the contract contained in the charter, and was void so far as the liquors in question were concerned. The court, in deciding against this contention, declared the principles that all rights are held subject to the police power of a state, and, if the public safety or the public morals require the discontinuance of any manufacture or traffic, the legislature may provide accordingly, notwithstanding individuals or corporations may thereby suffer inconvenience; and that, as the police power of a state extends to the protection of the lives, health, and property of her citizens, the maintenance of good order, and the preservation of the public morals, the legislature cannot by any contract divest itself of the power to provide for these objects. The court said:

"The plaintiff in error boldly takes the ground that, being a corporation, it has a right, by contract, to manufacture and sell beer forever, notwithstanding and in spite of any exigencies which may occur in the morals or the health of the community requiring such manufacture to cease. We do not so understand the rights of the plaintiff. The legislature had no power to confer any such rights."

In Stone v. Mississippi, 101 U. S. 814, the legislature of Mississippi had granted a charter to a lottery company, in consideration of a stipulated sum in cash and annual further payments, and during the life of the charter the state adopted a new constitution, prohibiting the sale of lottery tickets or the drawing of any lottery theretofore authorized; and the question was whether the rights and franchises of the lottery company were impaired by the new constitutional provision, and an act of the legislature to effectuate it, prohibiting all kinds of lotteries within the state, and making it unlawful to conduct one. The court said:

"If the legislature that granted this charter had the power to bind the people of the state and all succeeding legislatures to allow the corporation to continue its corporate business during the whole term of its authorized existence, there is no doubt about the sufficiency of the language employed to effect that object, although there was an evident purpose to conceal the vice

of the transaction by the phrases that were used. Whether the alleged contract exists, therefore, or not, depends on the authority of the legislature to bind the state and the people of the state in that way. All agree that the legislature cannot bargain away the police power of a state. 'Irrevocable grants of property and franchises may be made, if they do not impair the supreme authority to make laws for the right government of the state; but no legislature can curtail the power of its successors to make such laws as they may deem proper in matters of police.' * * * Any one, therefore, who accepts a lottery charter, does so with the implied understanding that the people, in their sovereign capacity, and through their properly constituted agencies, may resume it at any time when the public good shall require, whether it be paid for or not. All that one can get by such a charter is a suspension of certain governmental rights in his favor, subject to withdrawal at will. He has, in legal effect, nothing more than a license to enjoy the privilege on the terms named for the specified time, unless it be sooner abrogated by the sovereign power of the state. It is a permit, good as against existing laws, but subject to future legislative and constitutional control or withdrawal."

The regulation of the liquor traffic is an exercise of the police power of the state for the prevention of intemperance, pauperism, and crime. The courts have sanctioned the validity of most stringent statutes enacted in that behalf, such as those which declare the liquor kept for sale a nuisance, which authorize its condemnation and destruction, and which provide for the seizure and forfeiture of the building in which it is sold. Speaking of such statutes, Judge Cooley uses the following language:

"Perhaps there is no instance in which the power of the legislature to make such regulations as may destroy the value of property, without compensation to the owner, appears in a more striking light than in the case of these statutes. The trade in alcoholic drinks being lawful, and the capital employed in it being fully protected by law, the legislature then steps in, and, by an enactment based on general reasons of public utility, annihilates the traffic, destroys altogether the employment, and reduces to a nominal value the property on hand. Even the keeping of that for the purposes of sale becomes a criminal offence; and, without any change whatever in his own conduct or employment, the merchant of yesterday becomes the criminal of to-day, and the very building in which he lives and conducts the business which to that moment was lawful becomes the subject of legal proceedings, if the statutes shall so declare, and liable to be proceeded against for a forfeiture. A statute which can do this must be justified upon the highest reasons of public benefit; but, whether satisfactory or not, the reasons address themselves exclusively to the legislative wisdom." Cooley, Const. Lim. p. 720.

The court of appeals of this state in Board v. Barrie, 34 N. Y. 659, in considering the general question now involved, declared:

"These licenses to sell liquor are not contracts between the state and the persons licensed, giving the latter vested rights, protected on general principles and by the United States constitution against subsequent legislation; nor are they property, in any legal or constitutional sense. They have neither the qualities of a contract or of property, but are merely temporary permits to do what otherwise would be an offense against a general law. They form a portion of the internal police system of the state, are issued in the exercise of its police powers, and are subject to the direction of the state government, which may modify, revoke, or continue them, as it may deem fit."

It is urged for the plaintiff that the act of 1896 is not a police regulation, but is a taxing act; but the contrary has been decided by the court of appeals in the recent judgment in People v. Murray, 44 N. E. 147. The court said:

"The character of the act of 1896, whether a tax law in a proper sense, or a law enacted under the police power, must be determined from its whole scope

and tenor, and there can be no reasonable doubt, we think, that it is of the latter character."

For these reasons, the conclusion is reached that, notwithstanding his license, the plaintiff would be without remedy if the legislature had absolutely prohibited the sale of liquors in this state after the 30th day of June. Instead of doing this, it has required him after that date to conduct his traffic under precisely the same conditions which are prescribed for all others; but, for the purpose of saving his rights, and those of others similarly situated, has authorized a recovery from the town or city in which the license was granted of such proportion of the whole license fee as the remainder of the time for which such license would otherwise have run bears to the whole period for which it was granted. He has no just ground of complaint.

The motion is denied.