## NICK ARIE v. STATE.

No. 11.   Opinion Filed February 20, 1909.

(100 Pac. 23.)

1.   INTOXICATING LIQUORS—Constitutional Law—Adoption of Constitutional Provisions—Submission to Vote—Presumption of Regularity. The prohibition article, which was separately submitted with the Constitution for ratification or rejection, the party assailing the same failing to point out in what particular it was not properly submitted in accordance with Enabling Act June 16, 1906, c. 3335, 34 Stat. 267, it having been declared adopted and accepted and recognized by the political departments of both the federal and state governments, will not be declared by the courts invalid, on the ground that it was not properly submitted or adopted.

2.   INTOXICATING LIQUORS—Constitutional Law—Construction—Similar Language in Different Provisions—Obligation of "Contracts"— License—Schedule of Constitution—Repeal of Law Authorizing License —Effect. It was the intention of the framers of the Constitution that the prohibition provision, required to be incorporated therein by virtue of paragraph 2. sec. 3, Enabling Act June 16, 1906, c. 3335, 34 Stat. 269, should be enforceable in the courts of the state immediately upon the admission of the state into the Union.
2a.   Such provision was incorporated in section 7, art 1 (Bunn's Ed. sec. 9) by the framers thereof with a like intent.
2b.   The prohibition article (Bunn's Ed. sec. 499; Snyder's Ed. p. 394; Gen. St. Ann. Okla. 1908, p. 162) was submitted as a separate proposition, with the intention that it should become effective over the entire state in like manner, if approved by the people and the Constitution was also ratified.

2c.   A license issued under a general statute to a dealer in liquors is in no sense a "contract" between the state and the licensee, and is not protected by the contract clause of the federal Constitution, being a mere permit which may be modified, annulled, or revoked at the pleasure of the legislative power.

2d. A schedule to a Constitution generally contains temporary provisions for the preparatory machinery necessary to put the principles of the government under the Constitution in motion without disorder or collision, not as a rule to control the principles of the organic law, or to limit the same, but to carry the whole into effect without break or interval.

2e. The laws licensing the liquor traffic (article 1, c. 49, Wilson's Rev. & Ann. St. 1903), at the time of the admission of the state into the Union, were repugnant to the provisions of the prohibition article thereof, and were not extended to, and did not remain in force in, said state.

2f. A license to carry on the liquor traffic is revoked or annulled by the repeal of the law authorizing the granting of such license.

2g. A liquor license, the period for which it was issued not having expired when the state of Oklahoma was admitted into the Union, was revoked and discontinued on the admission of said state; the prohibition article thereof becoming then and there effective.

(Syllabus by the Supreme Court.)

1.    It is not necessary that indictments, informations or affidavits shall, upon their faces, show that they are being prosecuted in the name and by the authority of the state. It is sufficient if this appears from the record.

(Syllabus by the Criminal Court of Appeals.)

*Error from County Court, Comanche County; James H. Wolverton, Judge.*

*James F. Steck* and *Stevens & Meyers,* for plaintiff in error.

*W. C. Reeves,* Asst. Atty. Gen., for the State.

FURMAN, PRESIDING JUDGE. On the 18th of November, 1907, an information was filed against Nick Arie (hereinafter called defendant), by the county attorney of Comanche county, Oklahoma, for unlawfully disposing of intoxicating liquors to Zene Spurrier, on the 17th day of November, in Comanche county, state of Oklahoma. The defendant was placed upon trial on this charge and was found guilty by the jury, on /the 25th day of November, 1907. A motion for a new trial was filed and overruled. The defendant was sentenced to thirty days imprisonment and to pay a fine of fifty dollars. The defendant excepted and brought the case to the Supreme Court by appeal. Upon the cre-

ation of the Criminal Court of Appeals, the case was transferred to this court as required by statute. The Act of May 18, 1908, creating the Criminal Court of Appeals, contains this provision:

"If in any cause appealed to the Criminal Court of Appeals, in which the construction of the Constitution of this state, or of the United States, or any act of Congress is brought in question, the said Criminal Court of Appeals shall certify to the Supreme Court of the state, the question involving the construction of the Constitution of this state, or of the United States, or any act of Congress, for the final determination of the question so certified. Thereupon all further proceedings in said cause in the Criminal Court of Appeals shall await the decision of the Supreme Court upon such question. Upon the final decision of such question by the Supreme Court, said Supreme Court shall certify its decision on such question to the Criminal Court of Appeals, and said decision of such question by the Supreme Court shall govern said Criminal Court of Appeals."

In accordance with this provision of the law, this court certified the constitutional questions, with reference to the effect of the adoption of prohibition, to the Supreme Court for decision. In reply to this we have received the following answer to the questions propounded:

*Certified Questions from Criminal Court of Appeals.*

On the 14th day of December, A. D. 1908, the Criminal Court of Appeals certified to this court two questions, as will hereinafter appear in the body of the opinion, in which the construction of the prohibition article of the Constitution of the state is brought into question.

WILLIAMS, J.    1. "Was the constitutional provision with reference to the prohibition of the manufacture, sale, giving away, or otherwise furnishing intoxicating liquors and designated in the record as the 'prohibition amendment to the Constitution' properly submitted to the people for their ratification or rejection, as required by the provisions of the act of Congress known as the 'Enabling Act,' entitled 'An act to enable the people of Oklahoma and Indian Territory to form a Constitution and state government, and be admitted into the Union on an equal footing with original states,' etc., approved June 16, 1906, c. 3335, 34 Stat. 276."

Section 4 of the enabling act (c. 3335, 34 Stat. 271) provides that:

"In case a Constitution and state government shall be formed in compliance with the provisions of this act, the convention forming the same shall provide by ordinance for submitting said Constitution to the people of said proposed state for its ratification or rejection at an election to be held at a time fixed in said ordinance, at which election, the qualified voters of said proposed state shall vote directly for or against the proposed Constitution, and for or against any provisions separately submitted. The returns of said election shall be made to the Secretary of the territory of Oklahoma, who, with the Chief Justice thereof and the senior judge of the United States Court of Appeals for the Indian Territory, shall canvass the same, and if a majority of the legal votes cast on that question shall be for the Constitution, the Governor of Oklahoma Territory and the judge senior in service of the United States Court of Appeals for the Indian Territory shall certify the result to the President of the United States, together with the statement of the votes cast thereon, and upon separate articles or propositions and a copy of said Constitution, articles, propositions and ordinances. And if the Constitution and government of said proposed state are republican in form, and if the provisions of this act have been complied with in the formation thereof, it shall be the duty of the President of the United States, within twenty days from the receipt of the certificate of the result of said election and the statement of votes cast thereon and a copy of said Constitution, articles, propositions, and ordinances, to issue his proclamation announcing the result of said election, and thereupon, the proposed state of Oklahoma shall be deemed admitted by Congress into the Union under and by virtue of this act, on an equal footing with the original states. The original of said Constitution, articles, propositions and ordinances, and the election returns, and a copy of the statement of the votes cast at said election, shall be forwarded and turned over by the Secretary of the territory of Oklahoma to the state authorities of said state."

There is no contention that the convention had not the authority to submit the prohibition article as a separate proposition.

On the 16th day of November, A. D. 1907, the President of

the United States issued his proclamation, which is, in part, as follows:

"Now therefore, I, Theodore Roosevelt, President of the United States of America, do in accordance with the provisions of said act of Congress of June 16, one thousand nine hundred and six, declare and announce that the result of said election, wherein the Constitution formed as aforesaid, was submitted to the people of the proposed state of Oklahoma for ratification or rejection, was that the said Constitution was ratified, together with the provision for state-wide prohibition, separately submitted at said election, and the state of Oklahoma is to be deemed admitted by Congress into the Union, under and by virtue of said act, on an equal footing with the original states."

Plaintiff in error has failed to point out in what particular the same was not properly submitted, but see the following authorities: *Miller v. Johnson,* 92 Ky. 589, 18 S. W. 522, 15 L. R. A. 524; *Luther v. Borden,* 7 How. 1, 12 L. Ed. 581; *Prohibitory Amendment Cases,* 24 Kan. 700; *Kadderly v. City of Portland,* 44 Or. 118, 74 Pac. 715, 75 Pac. 222. Where a proposition has been submitted separately, at the same time with the Constitution, for ratification or rejection, and declared carried and accepted and recognized as properly adopted by the political departments of both the federal and state governments, and the party assailing the part claimed to be invalid on the ground that it was not submitted as required by the enabing act fails to point out wherein the same was not properly submitted for ratification or rejection, the courts will not in that event, if at all, declare the instrument, or any part of it, invalid for not having been properly submitted or adopted.

2.  "Was the liquor license, held by the employer of the plaintiff in error as a bartender, revoked by the adoption of the Constitution of Oklahoma, or continued in force in the state of Oklahoma for the period for which it was issued, by virtue of the provisions of section 1 of the schedule of the Constitution?"

For the purpose of ascertaining the intention of the framers of a Constitution we look at the entire instrument. The prohibition article (Bunn's Ed. § 499; Snyder's Ed. p. 394; Gen. St. Ann. Okla. 1908, p. 162), pursuant to section 4, *supra,* of the

enabling act was submitted separately at the same time the main body of the Constitution was submitted for approval or rejection; if approved to become a part of the main instrument, in the event of its approval. Said article provides that:

"The manufacture, sale, barter, giving away or otherwise furnishing, except as herein provided, of intoxicating liquors within this state or any part thereof, is prohibited for a period of twenty-one years from the date of the admission of this state into the Union. * * * upon the admission of this state into the Union these provisions shall be immediately enforceable in the courts of the state."

Section 3, Par. 2, of the enabling act, requires that a prohibition provision, containing practically the foregoing excerpt, should be incorporated in the Constitution of the proposed state, to apply to that portion of said state then known. as the "Indian Territory," the "Osage Indian Reservation," and such as existed as Indian reservations on the 1st day of January, A. D. 1906, and to continue in force for the period of 21 years from the date of the admission of the state into the Union, and thereafter until the people of said state should otherwise provide by amending the Constitution and proper state legislation. Said provision was accordingly incorporated in said instrument. Section 7, art. 1 (section 9, Bunn's Ed.) Snyder's Ed. p. 16; Gen. St. Ann. Okla. 1908, p. 77. With a view that such provision might extend to the entire state, if approved by a majority of the electors thereof voting thereon, it was submitted as a separate provision, if approved to become a part of the main instrument, if ratified. Prior to the 1st day of January, A. D. 1906, and even up to the 16th day of November, A. D. 1907, intoxicating liquors were not permitted to be sold in the Indian Territory, the Osage Indian Reservation, or any other Indian reservation within the territory now embraced in the state of Oklahoma. This requirement .of section 3, par. 2, supra, was a precautionary act on the part of Congress to continue in force, until the people of the state should otherwise provide in accordance with law, the prohibition of the sale of intoxicating liquors in the territory em-

braced in said state where prior thereto same had been pro-
hibited.

Where the same language is used in different provisions,
or different places in a Constitution the presumption is that it
was with the same meaning, unless the context or contemporan-
eous circumstances should clearly indicate otherwise.    It was
the purpose in the incorporation of the provisions of section
7, art. 1, *supra,* that the same should go immediately into effect
as to such portion of the state, and that no intoxicating liquors
should, under any circumstances, except as therein provided,
be sold.  "The most universal and effectual way of discovering
the true meaning of a law is by considering the  reason  and
spirit of it, or the cause which moved the legislature to enact it."
1 Bl. Com. 61.   Now why is not the same language as used in
the prohibition article (Bunn's Ed. § 499; Snyder's Ed. p.
394; Gen. St. Ann. Okla. 1908, p. 162) to be construed to the
same effect as the other provision, to wit, that such prohibition
article should, immediately upon the admission of the state, be
enforceable in the courts of said state?   It is contended that the
schedule to the Constitution (sections 449, 450, Bunn's Ed.;
Snyder's Ed. p. 380; Gen. St. Ann. Okla. 1908, p. 153) provides
that: "In order that no inconvenience may arise by reason of the
change from the forms of government now existing in the Indian
Territory and the territory of Oklahoma, it is hereby declared as
follows:  "No existing rights, actions, suits, proceedings, con-
tracts or claims shall be affected by the change in the forms of
government, but shall continue as if no change in the forms of
government had taken place.  *  *  *"—and for this reason
the liquor license remains in force after the admission of the
state   into the Union, until it expires of its own   limitations.
To determine  the meaning of this provisioin of  the  sched-
ule and the intention of the framers, it would not  be  amiss
to consider what the office of a schedule is.   It is a temporary
provision for the preparatory machinery necessary to put the
principles of the government under the Constitution in motion
without disorder or collision, not to control the principles of the

organic law or to limit the same where it may be in conflict therewith, but to carry the whole into effect without break or interval; to shift the machine gradually into another track, and, having done its office, it is stowed away in the lumber room of the government. *Commonwealth v. Clark* (Pa.) 7 Watts & S. 133. The entire instrument is to be examined in arriving at the meaning of any part thereof, and to be construed as a whole. Effect is to be given, if possible, to each section, clause, and word; and if any part be doubtful, it must be interpreted with every fair intendment to harmonize with the main purpose, and not to defeat it. *Mabury v. Madison,* 1 Cranch, 174, 2 L. Ed. 60; *Bryan v. Menefee,* 21 Okla. 1, 95 Pac. 471; *Trapp v. Wells Fargo Express Co.,* 22 Okla.—97 Pac. 1003.

If the public safety or public morals require the discontinuance of traffic in the sale of intoxicating liquors, the hand of the Legislature cannot be stayed in providing for its discontinuance by any incidental inconvenience which individuals or corporations may suffer. All such rights are held subject to the police power of the state. *Beer Co. v. Mass.,* 97 U. S. 32, 24 L. Ed. 989. The weight of authority is overwhelming that no immunity, by virtue of any constitutional provision, either federal or state, exists so as to prevent the state Legislature from regulating, and even prohibiting the traffic in intoxicating drinks. *Bartemeyer v. State of Iowa,* 85 U. S. 129, 21 L. Ed. 929; *Mugler v. Kansas,* 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205. A. liquor license granted under the exercise of the Police power of the state is subject at all times to be annulled or revoked at the pleasure of the Legislature. *Powell v. State,* 69 Ala. 10; *Fell v. State,* 42 Md. 71, 20 Am. Rep. 83; *Kresser v. Lyman* (C, C.) 74 Fed. 765; *Board v. Barrie,* 34 N. Y. 659; *People v. Murray,* 149 N. Y. 367, 44 N. E. 147, 32 L. R. A. 344. A license to carry on the liquor traffic is revoked or annulled by the repeal of the law authorizing the granting of such license, or by any change in the legislation of the state or district inconsistent with the further exercise of the right conferred by the license, such as the

adoption of a prohibitory amendment to the Constitution, statute, or local option law. *Prohibitory Amendment Cases,* 24 Kan. 700; *State v. Tonks,* 15 R. I. 385, 5 Atl. 636; *Pleuler v. State,* 11 Neb. 547, 10 N. W. 481; *Hirn v. State,* 1 Ohio St. 15; *Hogan v. Guigon* (Va.) 29 Grat. 705; *Kresser v. Lyman* (C. C.) 74 Fed. 765; *Brown v. State,* 82 Ga. 224, 7 S. E. 915; *State v. Mulenhoff,* 74 Iowa, 271, 37 N. W. 329; *State v. Holmes,* 38 N. H. 235; *State v. Cooke,* 24 Minn. 247, 31 Am. Rep. 344; *Ex parte Lynn,* 19 Tex. App. 293; *Robertson v. State,* 12 Tex. App. 541; *Moore v. State,* 16 Miss., 137; *Sprayberry v. Atlanta,* 87 Ga. 120, 13 S. E. 197.

In the case of *Criswell v. Montana Central Ry. Co.,* 18 Mont. 172, 44 Pac. 525, 33 L. R. A. 554, the court held that by a Schedule rights were preserved, and it operated of itself to keep in force a system of laws for the government of the state, unless such laws were inconsistent with the Constitution. But that, as to such repugnant statutes, it operated as an effective repeal, for when the Constitution became the fundamental law, acts in conflict with it yielded; and when the question of a conflict is presented to the court, and the conflict clearly appears, the statute must be decided to be inoperative and void. In the case of *Watsl v. Montana Central Ry. Co.,* 24 Mont. 170, 61 Pac. 9, the court in construing section 1 of the Schedule to the Constitution, which is substantially the same as ours, said:

"The Constitution operated upon the statute so as to prevent other rights from accruing thereunder, but under its saving clause, as expressed in the section of the Schedule quoted, the right already accrued was preserved to be enforced 'under the laws of the state,' whatever they might be; for, after the right became fixed its enforcement no longer depended upon the statute, but was to be governed by the general provisions of the Code, suitable to the enforcement of all rights, without regard to their origin. This being our conclusion, it is not necessary to discuss what would have been the effect upon plaintiff's right in the absence of this section of the Schedule. An inquiry upon this subject would necessarily lead to an examination of the question whether the right asserted by the

plaintiff under the statute is 'property' within the meaning of the fourteenth amendment of the Constitution of the United States, and whether the section of our Constitution (section 2, art. 15), which repealed the statute, is within the malediction of the first section of that amendment."

Sections 1 and 9 of the Montana Schedule are substantially the same as sections 1 and 2 of that of Oklahoma.

It is earnestly insisted by counsel for the plaintiff in error that the privilege of engaging in the liquor traffic by virtue of a license is a right; but, under the authorities heretofore referred to, it is only such right or privilege as is subject to be discontinued at the will of the Legislative power. The laws permitting the license of the liquor traffic (article 1, c. 49, Wilson's Rev. & Ann. St. 1903), at the time of the admission of the state into the Union, were repugnant to the provisions of said prohibition article of the Constitution, and consequently did not extend to and remain in force in the state of Oklahoma after the admission of the state. Section 2, Schedule to Const. Okla.; section 451, Bunn's Ed.; Snyder's Ed. p. 381; Gen. St. Ann. Okla. 1908, p. 153. The law under which the license existed having failed, the right to continue business thereunder ceased. The validity of the license ceased with the repeal of the law by virtue of which it came into legal existence; the proclamation admitting the state of Oklahoma into the Union striking down the liquor license law, which prior to that time existed in Oklahoma Territory.

In the case of *Alsman et al. v. State of Oklahoma,* decided by this court on May 13, 1908, 21 Okla. 142 (95 Pac. 468, 16 L. R. A. [N. S.] 511), it was held that in any action to recover a certain sum the unearned portion of license fee, paid by licensees to licensor while a city of the first class, organized and existing under the laws of the territory of Oklahoma, for a license duly issued to sell malt, spirituous and vinous liquors, the petition which states that by reason of the ratification and adoption of the Constitution of the State, together with the prohibitory clause as a part thereof, by vote of the qualified electors of said proposed state on September 17, 1907, prohibiting the sale of such .

liquors within the said territory upon its admission into the Union, and that said city since that time, without fault of the licensees, forced said licensees to close their place of business and cease to sell such liquors under their said license, under threats of prosecution, sufficiently states a cause of action, and a demurrer thereto was improperly sustained. The question raised here was not discussed in that case, but it was necessary to assume that such license was revoked by the adoption of the Constitution before Oklahoma City would have had a right thereby to prevent, by prosecution, such parties from carrying on their business, under such license, on the ground of the adoption of said prohibition article. We conclude that the rights referred to in section 1 of the Schedule to the Constitution do not include such rights as the exercise of which depends upon a law, the repeal of which abrogates the continuance of such right, when the continuance of the same is repugnant to the spirit, as well as the letter, of the Constitution. *Cusic v. Douglas,* 3 Kan. 123, 87 Am. Dec. 458.

We accordingly conclude that a liquor license, the time for which it was issued not having expired at the time the state of Oklahoma was admitted into the Union, was revoked and discontinued when said Constitution became effective.

All the Justices concur.

In addition to the questions certified to the Supreme Court the defendant in his brief seeks to secure a reversal of this case upon the following ground:

"The information in this case fails to show upon its face that the prosecution was by the authority of the state of Oklahoma, as required by section 19, art. 7., of the Constitution."

The clause of the Constitution relied upon by counsel is as follows:

"Sec. 192. The style of all writs and processes shall be 'The State of Oklahoma.' All prosecutions shall be carried on in the name and by the authority of the state of Oklahoma. All indictments, informations, and complaints shall conclude, 'Against the peace and dignity of the state.' " (Bunn's Const. of Okla.)

In the case at bar, while it is true that the information, upon its face, does not state that it was presented in the name and

by the authority of the state of Oklahoma, yet the entire record shows that this prosecution was carried on in the name and by the authority of the state. We could cite pages of authorities to show that this is all that the Constitution requires, but will content ourselves with quoting section 2, p. 422, Vol. 10 of Cyc:

"Under the constitutional requirements that criminal prosecutions shall be carried on in the name and by the authority of the state, precedents seem to indicate that this is made to appear in the commencement of the indictment when it is expressly shown; but the authorities in which the question has been presented seem to be agreed that there need be no formal statement of the fact in the indictment when it appears from the record that the prosecution is actually conducted by the authority of the state, as the only object of the Constitution requiring prosecutions to be in the name of the state is to exclude any other or foreign power from the exercise of such authority."

In cases less than capital this court will not consider any questions except those presented in the briefs of counsel; all others are waived. This is the settled policy of this court. Therefore we will not consider other questions arising during the trial, which are not presented in the briefs.

The judgment of the lower court is affirmed.

BAKER and DOYLE, JUDGES, concur.