TRAPP, *Auditor*, v. WELLS FARGO EXPRESS CO.

No. 403.   Opinion Filed October 24, 1908.

(97 Pac. 1003.)

1.    STATUTES—Construction—Intent. It is a proper rule of construction that the entire act or instrument is to be examined, with a view of arriving at the true intention of each part, and that effect is to be given, if possible, to the whole instrument and to every section and clause.

2.    SAME—Conflicting Provisions. If different portions seem to conflict, courts must harmonize them, if practicable, favoring that construction which will render every word operative, rather than one which makes some words idle and nugatory.

3.    SAME—Acts Passed on Same Day. Acts passed on the same day, separately, or at the same session of the Legislature, are to be construed together, the presumption being that they are all intended to operate, and may not be revoked or altered by construction, when the words may have their proper operation without it.

4.    ELECTIONS—State Election Board—Duties. The state election board is a part of the executive department of the state, and is subordinate to the Secretary of State in performing duties imposed upon it by statute, when the Constitution requires such Secretary to have such duties performed.

5.    SAME—Ballots—Duty of Secretary of State. It is the duty of the Secretary of State to certify the title and text of each measure presented by initiative or referendum petition, or the Legislature, including constitutional amendments, to the state printer in due time, and to see that the state printer has printed upon the official ballots, as contracted for by the state printing board, such title and text.

6.    STATE FINANCE—Submission of Referendum—Expenses. The Secretary of State is required to forward, or cause to be for-

warded, to the county clerk of each county a sufficient number of pamphlets relating to questions submitted, by initiative and referendum petitions, or by the Legislature, including constitutional amendments, to the people for their approval or rejection; but such duty having been performed by the state election board, and a voucher having been drawn by the said board upon an available fund, to be paid not only for transporting said pamphlets, but also the election supplies, it being admitted that the charges were reasonable and just, and that the same should be paid by the state, the fact that in such voucher for transporting election supplies was included the charge for transporting the pamphlets, which was properly an expense belonging to the office of Secretary of State, is not such prejudicial error as will require the reversal of the judgment of the lower court; the interests of the state not being prejudiced thereby.

7.    **SAME.** It is more advisable, however, for the Secretary of State, in the future, to transmit such pamphlets and arguments, it being a duty, under the statute, solely imposed upon his office, separately and independent of the election board, to the county clerk of each county.

(Syllabus by the Court.)

*Error from District Court, Logan County; A. H. Huston, Judge.*

Agreed case between M. E Trapp, State Auditor, and others and the Wells Fargo Express Company. From the judgment, the State Auditor brings error. Affirmed.

On August 14, A. D. 1908, M. E. Trapp, State Auditor, and the state election board, by its secretary, Will Linn, and Leo Meyer, acting Secretary of State, and the Wells Fargo Express Company submitted for decision of the district court of Logan county the following agreed case, to wit:

"It is hereby agreed by the Wells Fargo Express Company, by William Murdoch, its attorney, and the state of Oklahoma, by Chas. West, Attorney General, that a controversy shall be submitted, under the Oklahoma statute, to the judge of the district court of Oklahoma, for Logan county, in writing, with the request for a judgment to be rendered therein at the earliest convenience of said court, and that the losing party shall at once perfect an appeal to the Supreme Court of Oklahoma, and that the matter be submitted to that court with a request, concurred in by both parties, for the advancement of the case on the docket at the

earliest convenience of said. court, and for said purpose the following are the agreed facts:

"That now, and at all times named therein, J. T. Gray was the chairman, and Will Linn was the secretary, of the state election board of said state, and that said state election board, through the act of said J. T. Gray, as chairman and Will Linn as secretary, who in doing so were authorized to do said act, sent, or caused to be sent, transmitted, and transported by Wells Fargo Express Company certain registration certificates, election supplies, and pamphlets of the initiative and referendum propositions, all of which to be voted upon at the election to be held in the year nineteen hundred and eight in the state of Oklahoma, from Guthrie, the place where said state election board then and now held its office, to various places within said state, as shown by the itemized statement hereto attached; that said Wells Fargo Express Company was then and there a common carrier in said state, and under the duty and obligation of transporting and transmitting the said election supplies delivered to it for transportation, and did faithfully its full duty in the transportation and transmission of the same, and that a reasonable and legal compensation, according to the legal, reasonable, and proper rate, for said transportation was two hundred and twenty-two dollars and twenty-two cents ($222.22), as shown by the voucher and itemized statement hereto attached and made a part hereof; that the said voucher with said statements was examined and approved by said state election board, as shown by the official indorsement of said J. T. Gray and Will Linn thereon; that the said account and voucher was duly and properly sworn to as being just, correct, and that the services were actually rendered as therein stated by Geo. P. Hickey, who in doing so was acting as the agent of said Wells Fargo Express Company, and who had actual knowledge of the facts therein sworn to—all of which appears on said voucher; that a proper voucher therefor was filed with the Auditor of said state in due time, as shown by the indorsement on said voucher; and that said Auditor refuses to draw a warrant for the payment of the same, for the reason that house bill 174 apparently places the duty of preparing and transmitting said election supplies upon the Secretary of State, who was allowed a contingent fund by the Legislature, whereas the general election law, subsequently passed to house bill 174, puts said duty of transmitting said supplies upon the secretary of the state election board, and that an appropriation was properly made

to cover the expenses of said state election board, and said Auditor does not know whether said warrant should be drawn upon the account of said Secretary of State or said state election board; that if said warrant is to be drawn upon the account of said Secretary of State, the said Secretary of State has not examined and approved the same; that the Auditor is ready and willing and anxious to perform whatever duty in the premises may be required by law, and joins with the Wells Fargo Express Company in praying the court for an early adjudication and order as to which fund, if any, he shall draw the warrant for said expense upon, and in this controversy the Secretary of State and said state election board join through its attorney, the Attorney General of the state, and by the signature to the hereunto statement of facts."

On the same day the same was heard, and the court found from the admitted facts that it was the duty of the State Auditor to audit and allow the claim of the Wells Fargo Express Company, as therein set forth, and judgment was accordingly rendered against the auditor, requiring him to audit and allow the claim of the Wells Fargo Express Company for carrying and transporting election supplies, as set out in the voucher, and to draw his warrant therefor, and deliver the same to the said express company, and that the said express company recover its costs therein expended. Exceptions were duly saved on the part of the State Auditor, and an appeal prosecuted to this court on petition in error.

*Chas. West, Atty. Gen., W. C· Reeves, Asst. Atty. Gen.,* and *E. G. Spilman, Asst. Atty. Gen.,* for plaintiff in error.
*Wm. Murdoch,* for defendant in error.

WILLIAMS, C. J. (after stating the facts as above). The question involved in this controversy is whether or not the expenses of transmitting and transporting certain registration certificates, election supplies and pamphlets, relating to the initiative and referendum propositions, including the proposed constitutional amendments submitted by the Legislature, to be voted upon at the general election on the first Tuesday in November, A. D. 1908, from

the state capitol, the place where the state election board and the Secretary of State maintain their respective offices, to various places in the state, shall be paid out of funds available for the state election board, or funds available for the expenses of the office of Secretary of State.

"The Secretary of State shall submit to the state or public printer a copy of the title and text of each measure presented by initiative petition, referendum petition, and by the Legislature. Printed copies shall be supplied the document rooms, from time to time, and the chief of each shall supply copies to applicants and in such quantities as demanded, provided reasonable assurance is given that they will be placed singly in the hands of the people." (Section 9, House Bill 174, Sess. Laws Okla. 1907-08, p. 446, c. 44.)

"The ballots and other election supplies for the state, as herein mentioned, shall be delivered to the state election board on or before the fifteenth day preceding each election, and the printer with whom the contract was made, or the state printer, if done under the supervision of such an official, shall, before such delivery can be accepted by said board, subscribe to the following oath, which shall be placed on file by the secretary of said board: [Oath omitted]. The state election board shall require that the supplies for the several voting precincts be so packed that there will be a bundle for each precinct, in which shall be all the ballots, articles and supplies which belong to such precinct, and when the same have been checked over and found to be correct, they shall be placed in a box or bag and labeled with the names of the county, township or precinct to which they belong. Such supplies shall be so packed that they can be easily inspected when delivered to the county election board. On or before the twelfth day preceding each election, the state election board shall, after carefully packing in boxes or sacks, ship by express, the election ballots and supplies for the several precincts of the several counties to the secretary of the county election board, notifying him how, when and where said supplies were sent. Upon receipt of such supplies the county board shall immediately make a thorough inspection of the bundle for each precinct, to see that nothing has been omitted, and that the several precincts have the supplies prescribed by this act. Should there be a deficiency in the ballots, printing material or supplies, or in anything which the

state board alone can supply, the county board shall immediately notify said state board of such shortage, and said state board shall proceed to promptly supply the missing material. Should the missing supplies be such as the county board can procure, it shall immediately purchase the same and supply the shortage," (Senate Bill 23, pp. 329-331, c. 31, art. 3, § 3 [Sess. Laws Okla. 1907-08].)

It is contended by the Attorney General that section 9, *supra*, contemplated that the Secretary of State should perform and do all things necessary to the distribution of each proposition submitted to the people either by initiative or referendum petition, or by the Legislature, whether statutory or organic and that section 3, *supra*, being broad enough to include all classes and kinds of ballots, conflicts with the provisions of said section 9. It is a proper rule of construction that the whole instrument or act is to be examined with a view of arriving at the true intention of each part, and if any section of the law be intricate, obscure, or doubtful, the proper way to determine its true meaning is by comparing it with other sections, and finding out the sense of one clause by the words or obvious intent of another, and in making such comparison it is not to be supposed that any words have been employed without occasion, or without the intent that they should have effect as a part of the law. Effect is to be given to the entire instrument or act, and to every section and clause, and if different portions seem to conflict, the courts must harmonize them, if practicable, and must lean in favor of the construction which will render every word operative, rather than to one which will make some words idle and nugatory. Statutes may not be revoked or altered by construction when the words may have their proper operation without it, but, in the nature of things, contradictions cannot stand together; and where there is an act or provision which is general and applicable, actual or potential, to a multitude of subjects, and there is also another act or provision which is particular and applicable to one of these subjects, and inconsistent with the general act, they are not necessarily so inconsistent that both cannot stand, though contained in the same act, or though

the general law were an independent enactment.  The general act would operate, according to its terms, on all the subjects embraced therein, except the particular one which is the subject of the special act, which would be deemed an exception, unless the terms of the latter, which were general, manifestly intended to exclude the exception.  If the general and special provisions are in the same act, or passed on the same day in separate acts, or at the same session of the Legislature, the presumption is stronger that both are intended to operate.  Cooley's Const. Lim. (7th Ed.) pp. 91, 92; Sutherland, Stat. Const. 1891, §§ 215, 217, 239-241, 325.

· Section 9, *supra*, is, in substance, contained in section 8, c. 226, House Bill 123, Gen. Laws Or. 1907, pp. 403-405.  There it was contemplated that the Secretary of State should transmit by mail, with postage fully prepaid, to every voter in the state whose address he may have, one copy of the pamphlet containing arguments for and against measures submitted to the people for their approval or rejection.  In certain cases the cost of paper and printing the arguments are required to be borne by the parties presenting the same, the distribution being under the control and direction of the Secretary of State.  Under the general laws of Oregon it is the duty of the Secretary of State to furnish, to the county clerks of the several counties, certified copies of the names of the candidates for state and district offices, and also a certified copy of the ballot, and title and numbers of the several measures to be voted upon at the ensuing general election; there being no state election board.   B. & C. Comp. Or. 1902, § 2763; Gen. Laws Or. 1907 (24th Sess.), p. 402, c. 226, § 6 (House Bill 123).   Article 24, § 1 (Bunn's Const. § 446) Okla. Const., provides that:

"Any amendment or amendments to this Constitution may be proposed in either branch of the Legislature, and if the same shall be agreed to by a majority of all the members elected to each of the two houses, such proposed amendment or amendments shall, with the yeas and nays thereon, be entered in their journals and referred by the Secretary of State to the people for their approval or rejection, at the next regular general election.  *  *  *  *"

Article 3, § 4 (Bunn's Const. § 46) Okla. Const., provides that:

"The Legislature shall enact laws creating an election board (not more than a majority of whose members shall be selected from the same political party), and shall provide the time and manner of holding and conducting all elections. * * * "

The election board, as a part of the executive department of the state, is subordinate to the office of the Secretary of State in performing duties imposed upon it by statute, when the Constitution requires such Secretary to have such duties performed. In Oregon, when the Secretary of State, certifies the names of the candidates for state and district offices, and the title and numbers of measures to be submitted to the people, to the county election board, he is causing same to be referred to the people for their approval or rejection. In like manner, in the state of Oklahoma, when the Secretary of State submits to the state or public printer a certified copy of the title and text of each measure presented by initiative or referendum petition, or by the Legislature, including constitutional amendments, by such action he is having referred to the people such provisions for their approval or rejection.

Section 14, c. 44, House Bill 174, pp. 448, 449, Sess. Laws Okla. 1907-08, is taken substantially from section 6, c. 226, Sess. Laws Or. 1907, pp. 402, 403, and has no application in this state, since the passage of Senate Bills 23 and 168, Sess. Laws Okla. 1907-08, c. 31, pp. 316-376, for the duty is not here imposed by statute or the Constitution upon the Secretary of State to furnish to the county clerks of the several counties certified copies of the names of the candidates for state and district offices, the duty resting upon the state printing department or board to advertise for bids, and let contracts for printing all ballots, over which the state election board has jurisdiction. Article 3, § 1, Senate Bill 23, Sess. Laws Okla. 1907-08, p. 328, c. 31. Such duty also rests upon the county election board for all ballots over which it has jurisdiction. Article 4, § 1, Senate Bill 23, Sess. Laws Okla. 1907-08, c. 31, pp. 334, 335. It is also incumbent upon the state

election board to cause proper copy to be prepared on or before the first day of September succeeding each primary election, from which shall be printed the state election ballots for each precinct of each county, upon which must appear the names of the candidates for all state and district offices, including members of the Legislature. The state election board has complete supervision and charge of printing the ballots, and furnishing the election supplies and the distribution thereof (Article 3, §1, c. 31, Senate Bill 23, Sess. Laws Okla. 1907-08, p. 328), and shall cause them to be shipped by express to the secretary of the county election board. Section 3, Senate Bill 23, Sess. Laws Okla. 1907-08, c. 31, pp. 330, 331.

It is nowhere specifically provided that the state election board shall have charge or control of the distribution of the pamphlets containing the arguments favoring or opposing measures submitted to the people. On the contrary, section 13, House Bill 174, Sess. Laws Okla. 1907-08, p. 447, c. 44, provides that:

"Before the mandatory primary election held throughout the state, at which any proposed law, part of an act, or amendment to the Constitution is to be submitted to the people, the Secretary of State shall forward, or cause to be forwarded, to the county clerk of each county in this state a sufficient number of the pamphlets hereinafter described, with which to supply each and every voter of his county, and an additional number equal to ten per centum of such number of votes; and at the time of furnishing the primary election supplies, said county clerk shall furnish each election inspector his quota for each precinct wherein a primary election is to be held, a sufficient number of the copies of the text of each measure, to be submitted to popular vote; also a copy of the arguments for and against such measure, and a copy of the official ballot, bound together in a single pamphlet with a table of contents," etc.

It is evidently the duty of the Secretary of State to certify the title and text of each measure presented by initiative petition, referendum petition, or by the Legislature, including constitutional amendments, to the state printer, which shall be printed

Vol. 22—25

upon the official ballots as contracted for by the state printing board. These ballots are, at a stated time, to be delivered to the state election board, and in due time the state election board must transmit these ballots to the county election board. All of this machinery belongs to the branch of the executive department of the state, and by section 1, art. 24, of the Constitution, *supra*, it is the duty of the Secretary of State to see to it that the state printer and the state election board perform their duty with reference to the submission of measures by the initiative and referendum, and by the Legislature, including constitutional amendments, to the people for their approval or rejection. It still remains the duty of the Secretary of State (section 13, House Bill 174, Sess. Laws Okla. 1907-08, p. 447, c. 44) primarily, "to forward or cause to be forwarded to the county clerk of each county a sufficient number of pamphlets," etc. It was not incumbent upon the state election board to forward these pamphlets, no such duty being imposed upon it by law. However, it appears that in this instance the state election board performed such duty, and it is assumed that the pamphlets, ballots, and all election supplies were transmitted by express together, and at the same time. It was commendable on the part of the secretary of the state election board to render this public service. But it does not appear that it would be reasonably possible to segregate the charges for transmitting the pamphlets from the entire charge, which it is agreed is reasonable and just, for transporting the election supplies including these pamphlets.

As this service was performed by the defendant for the benefit of the state, and the total charge therefor earned, this controversy is merely to determine which department should draw the voucher upon which the Auditor should issue the warrant upon the State Treasurer. The state election board having issued the voucher upon a fund available, we cannot see where any error, prejudicial to the rights of the state, or any of its departments, has been committed by the judgment of the lower court. However, in the future, as long as the law remains in its present status, it

would be more advisable for the Secretary of State to transmit these pamphlets and arguments, separately, and independent of the state election board, to the county clerk of each county.

Let the judgment of the lower court be affirmed.

All the Justices concur.