## EDWARDS et al. v. CARTER, State Auditor, et al.

No. 25073.　Jan. 30, 1934.

Rehearing Denied Feb. 6, 1934.

Hall & Thompson, for petitioners.

J. Berry King, Atty. Gen., and Randell S. Cobb, Asst. Atty. Gen., for respondents.

Ledbetter, Stuart, Bell & Ledbetter, for intervener.

PER CURIAM. This is an original proceeding in this court in which the petitioners pray for a writ of mandamus requiring the State Auditor to allow their salary claims in the sum of $625 each month, and requiring the State Treasurer to pay said warrants or indorse thereon proper notation, as by law provided, for the allowance of interest.

The allegations of the petitioners are that at the time of their election to office the salary provided by law for each of their offices was $7,500 per annum, payable monthly, and that the State Auditor has refused to allow their claims for salaries in an amount greater than $500 per month. The Hon. Wm. H. Murray, Governor of the state of Oklahoma, was permitted to intervene in the action.

The Governor and the respondents admit that each of the petitioners is entitled to the amount of salary provided by law for their offices at the time of their election. They admit that under the provisions of section 10, article 23, of the Constitution, neither the salary nor the emoluments of either of the petitioners may be changed after his election or during his term of office. They contend, however, that neither of the petitioners is entitled to a warrant for his salary for more than $500 during any month of this fiscal year. They base that contention on the fact that the Legislature appropriated for this fiscal year for the office of each of the petitioners only $6,000 payable monthly. Chapter 5, Session Laws 1933.

Under the provisions of section 2, article 10, of the Constitution it was the duty of the Legislature to "provide by law for an annual tax sufficient with other resources to defray the estimated ordinary expenses of the state for each fiscal year." The salary provided by law for the offices held by the petitioners is a part of the ordinary expenses of the state.

Let us remember that the people constitute the sovereignty; that the people have spoken through their Constitution; that they have set up a government of three separate, independent and co-ordinate departments; that to each department the people, by their Constitution, delegated certain powers, with certain limitations and restric-

tions on the exercise thereof, and that by those limitations and restrictions certain fields were definitely and permanently withdrawn from the field of legislative action.

By section 36, article 5, of the Constitution, the authority of the Legislature is extended to all rightful subjects of legislation, but by the provisions of section 10, article 23, of the Constitution, it is provided:

"Except wherein otherwise provided in this Constitution, in no case shall the salary or emoluments of any public official be changed after his election or appointment, or during his term of office, unless by operation of law enacted prior to such election or appointment; nor shall the term of any public official be extended beyond the period for which he was elected or appointed. * * *"

This constituted a limitation and restriction upon the power of the Legislature. Any attempt, directly or indirectly, by the Legislature to evade the force and effect of that constitutional limitation and restriction is ineffective and void. There is no principle of our government that is better settled than that the salary or emoluments of a public official cannot be changed during his term of office in violation of such a constitutional prohibition. In fact, the respondents and intervener concede the full force and effect of the above plain and unambiguous constitutional limitation, and admit that the petitioners are entitled under the Constitution to receive their undiminished salaries, unless said constitutional limitation is modified by a further constitutional provision which we shall hereinafter notice. The state expects and should have the utmost fidelity from its public officials. The makers of the Constitution guaranteed to its public officials by the above constitutional provision fidelity and good faith to them, and withdrew from the field of legislation the question of their salary and emoluments of office during their term. The Legislature is without power to repudiate the pledged faith of the people to its public officers, and any effort on its part to do so is utterly void.

It is said, however, that this is a period of economic stress, and that by reason thereof the Legislature saw fit, and had the power to refuse, to appropriate money sufficient to pay the salaries of the petitioners as fixed by the Constitution and laws. It must be remembered that constitutional provisions are made to endure in times of adversity as well as in times of prosperity. It was well said by the Su-

preme Court of the United States in Home Building & Loan Ass'n v. Blaisdell et ux., 54 S. Ct. 231, 235, 78 L. Ed.—promulgated on the 8th day of January, 1934:

"Emergency does not create power. Emergency does not increase granted power or remove or diminish the restrictions imposed upon power granted or reserved."

The people of the state are loyal, faithful, and true to their Constitution; they want economy in government; but they do not desire the repudiation by the state of its good faith or of its obligations.

This wholesome provision of our Constitution was placed therein with a dual purpose: One, as a pledge to the public officers that they would be compensated in a fixed sum during their term of office; the other, as a protection to the people in preventing the increasing of the salaries of public officers through enthusiastic waves of popular approval of some public official, thereby encouraging such public official to disregard his public duties in order to win popular acclaim and in order to increase the salary or emoluments of his office. Political expediency should never be used to attempt to circumvent or ignore the plain, direct provisions of the Constitution. The petitioners in this case are elected public officials; their terms of office were fixed by law; their salaries were fixed at the sum of $7,500, payable monthly, prior to their election, and they are entitled to this salary undiminished unless by other provisions of the Constitution they are precluded from drawing the same. We shall, therefore, consider the other contentions in this case.

The question in this case is whether or not the petitioners are entitled to payment monthly during this fiscal year of the amount of salary provided by law, or whether they are entitled only to the amount of salary for which the Legislature made an appropriation.

It is said that the making of an appropriation in a lesser amount than that provided by law is not a reduction in the amount of salary. It is, however, a change in the emoluments of office. Under the provisions of section 10, article 23, of the Constitution, neither the salary nor the emoluments may be changed. The payment of the salary of public officers at the time provided by law is one of the emoluments of office. The withholding of the amount of salary to which a public officer is entitled operates to diminish the value thereof. We

quote from the language of the Supreme Court of the United States in the case of O'Donoghue v. United States, 289 U. S. 516, 77 L. Ed. 1356, as follows:

" 'Obviously, diminution may be effected in more ways than one. Some may be direct and others indirect, or even evasive as Mr. Hamilton suggested. But all which by their necessary operation and effect withhold or take from the judge a part of that which has been promised by law for his services must be regarded as within the prohibition. Nothing short of this will give full effect to its spirit and principle.' "

The Governor and the respondents say that the Legislature failed to perform its duty, and that as a result of such failure the petitioners must suffer diminution and change in the salary and emoluments of their offices although such diminution and change are expressly prohibited by the Constitution. We must concur in that statement if there is any duty on the part of the Legislaure to make an appropriation for the payment of the salaries of public officers of the state, but if there is no such duty, there has been no dereliction. The petitioners contend that it is no part of the duty of the Legislature to make an appropriation for the payment of salaries of the public officers of the state. They contend that the appropriation for those salaries was made by the people in the Constitution.

Section 17 of the Schedule to the Constitution provides:

"The members of the Board of Agriculture, Bank Commissioner, Clerk of the Supreme Court, and all other state officers, except as herein provided, or such as may be created, and all clerks and assistants, shall receive such compensation for their services as may be provided by law."

The offices of the petitioners were created pursuant to law and come within the provision "such as may be created." The term of their offices was fixed by law. It was provided that they "shall receive such compensation for their services as may be provided by law." Compensation for the services of the petitioners was provided by law at $7,500 per annum, payable monthly. Thereby the constitutional provision was vitalized. Under that provision they "shall receive such compensation." That provision constitutes an appropriation by operation of law for the payment of the salary of the petitioners.

The Governor and the respondents contend that under the provisions of section 55, article 5, of the Constitution, no money shall ever be paid out of the treasury of the state, nor any of its funds, nor any of the funds under its management, except in pursuance of an appropriation by law, nor unless such payments be made within two and one-half years after the passage of such appropriation act. They contend that the appropriation must be made by legislative enactment, and that funds may not be disbursed after the expiration of two and one-half years from the passage of such appropriation act. If that was the intention of the makers of the Constitution, they have provided a plan by which the provision of the Constitution that the salary or emoluments of a public official may not be changed during his term of office, and the provision of the Constitution that public officers shall receive the salary provided by law, may be defeated by the Legislature failing or refusing to make an appropriation, or by the Governor vetoing such an appropriation with the approval of one-third of the members of either house of the Legislature. When we know the history which led to the inclusion in the Constitution of the provision with reference to the payment of salaries of public officers and the provision prohibiting the changing of such salary or emoluments during the term of office, we must conclude that there was no such intention on the part of the people. Those reasons were set forth in the decision in O'Donoghue v. United States, supra, wherein the Supreme Court of the United States had under consideration a similar provision contained in the Constitution of the United States, and wherein it said:

"In framing the Constitution, therefore, the power to diminish the compensation of the federal judges was explicitly denied, in order, inter alia, that their judgment or action might never be swayed in the slightest degree by the temptation to cultivate the favor or avoid the displeasure of that department which, as master of the purse, would otherwise hold the power to reduce their means of support."

It is our duty to construe the Constitution so as to give all parts of it the same force and effect where this can be done and meet the intention of the lawmakers. Bohart et al. v. Anderson, 24 Okla. 82, 103 P. 742; Trapp, Auditor, v. Wells Fargo Express Co., 22 Okla. 377, 97 P. 1003.

It is a proper rule of construction that the entire act or instrument is to be examined with a view of arriving at the true

intention of each part, and that effect is to be given, if possible, to the whole instrument and to every section and clause. Bohart et al. v. Anderson, supra; Trapp, Auditor, v. Wells Fargo Express Co., supra.

It is said that there is an irreconcilable conflict between the provisions of section 10, article 23, of the Constitution and the provisions of section 55, article 5, of the Constitution. However, there is no such conflict when the provisions of section 17 of the Schedule to the Constitution are considered. The provisions of section 17 of the Schedule to the Constitution and section 10, article 23, of the Constitution, as heretofore stated, were included therein as a protection to each of the departments of government against encroachment by any other department of government. To hold otherwise would be to hold that every public official of the state is dependent for the payment of his salary on the action of the Legislature in making an appropriation therefor. Should we so hold we would destroy the effect of constitutional provisions, which, paraphrasing the language of the Supreme Court of the United States, were adopted that the judgment or action of the public officials of the state might never be swayed in the slightest degree by the temptation to cultivate the favor or avoid the displeasure of the Legislature, which, under that contention, would be master of the purse and which would hold the power to reduce their means of support by failure, refusal, or delay in making provision for the payment of the salaries provided by law.

Since an appropriation was made by the "force and vigor" of the Constitution, it was unnecessary for the Legislature to include any amount for the salaries of the petitioners in an appropriation bill. It is doubtless good practice to include in such an appropriation bill a recitation of the amounts of all of the salaries of state officials. Each of the first thirteen Legislatures did so in proper amounts. The practice serves the useful purpose of calling to the attention of each succeeding Legislature, in a direct manner, the sum necessary to be raised by taxation or otherwise to defray the governmental expenses of the state. The stating of these fixed salaries in the general appropriation bill serves the further useful purpose of reminding the treasurer and auditor of the respective amounts to be paid. However, the fact that prior Legislatures have followed the practice, and the further fact that such practice is a whole-

some one and results in convenience, cannot operate to alter the Constitution or to create the situation that these fixed salaries of state officials may not be paid unless included in an appropriation bill. Though the Legislature did not include within the appropriation bill a sum sufficient to pay the salaries of the petitioners for the fiscal year, the Constitution of the state, adopted by the people thereof, by its "force and vigor," in connection with the legislative acts creating the offices, fixing the terms of office and providing the amount and method of payment of the salaries of the petitioners, was sufficient to constitute an appropriation "by law," as said words were used in section 55, article 5, of the Constitution.

It is said that section 55, article 5, of Constitution contains another provision, to wit, that no money shall ever be paid out of the treasury of this state, nor any of its funds, nor any of the funds under its management, unless such payments be made within two and one-half years after passage of the appropriation act, and that that provision prevents the payment of the salaries of the petitioners. Giving full force and effect to every clause contained in said constitutional provision, we call attention to the fact that the Legislature is empowered to make appropriations in reference to all rightful subjects of legislation, such as for the construction and maintenance of the highways of the state, for the various institutions, such as the university, the asylums, the penitentiaries, etc., and for the expenses of the various state officers. This clause in said constitutional provision was placed therein for the purpose of giving to the Legislature proper restraint of such state expenditures. It was intended thereby to prevent an appropriation for such purposes from being a continuing appropriation and that the same should expire at the expiration of two and one-half years. Such provision has no relation to an appropriation made by "force and vigor" of the Constitution.

The conclusion at which we have arrived was stated by the Court of Appeals of Maryland in Thomas v. Owens, Treas., 4 Md. 189, decided in 1853. With reference to that decision the Supreme Court of Arizona, in Windes v. Frohmiller, State Auditor, 3 P. (2d) 275, said:

"The leading case on this point was decided in 1853, by the Court of Appeals of Maryland, in Thomas, Comptroller, v. Owens, Treasurer, 4 Md. 189. This was an application for a writ of mandamus to com-

pel the payment of the salary of the Comptroller. The State Treasurer refused to pay the same because no appropriation therefor had been made by the Legislature. The Constitution of the state of Maryland (article 6, sec. 1) created the office of Comptroller and provided that he 'shall receive an annual salary of two thousand five hundred dollars.' The Maryland Constitution also directed that no money should be drawn from the state treasury except in accordance with appropriation made by law. The Court of Appeals of that state enunciated the principles involved with such logic and clarity that we choose to quote its language rather than to elucidate extensively ourselves upon them. The court said:

" 'We are of opinion the Constitution, proprio vigore, makes such appropriation.

" 'Under our system of government its powers are wisely distributed to different departments; each and all are subordinate to the Constitution, which creates and defines their limits; whatever it commands is the supreme and uncontrollable law of the land. * * *

" 'It (meaning the provision of the Constitution that no money should be disbursed without an appropriation) was obviously inserted to prevent the expenditure of the people's treasure without their consent, either as expressed by themselves in the organic law, or by their representatives in constitutional acts of legislation. * * *

" 'These being the purposes and objects of the clause, the question is: Have the people given their consent to the payment of the salary of the Comptroller? That they have done so is palpably manifest. They have said he 'shall receive an annual salary of two thousand five hundred dollars.' They have not merely said he **may claim** such a sum, but, emphatically, that he **'shall receive'** it. It is impossible for human language to be less ambiguous or more positive. The people, in their organic law, —which is paramount to all other law— have not only given their consent, but they have imperatively issued their commands that the particular officer 'shall receive' it. * * *

" 'An opposite interpretation would countenance this paradox, that a co-ordinate branch of the government could stop its whole machinery, by refusing to pay the salaries of those upon whom is devolved the discharge of the duties of the other branches; and this too when the Constitution expressly declares that these officers "shall receive" their salaries, and that they "shall not be diminished." "It would be giving to the Legislature a practical and real omnipotence, with the same breath which professes to restrict their powers within narrow limits. It is prescribing limits, and declaring that those limits may be passed at pleasure.' " * * *

" 'Now, it is presumed, it would not be contended by any one, however hazardous, that if the Legislature were to pass an act diminishing the salary of the Governor or of any other officer whose salary is fixed by the Constitution, that such an exercise of power would be rightful and constitutional. If it be not competent to the Legislature to take away a part, by what process of reasoning can it be maintained that they can take away the whole? And yet this is the extent to which the argument addressed to us goes. It seems to us to be but necessary to state the proposition, to cause its instantaneous rejection.'

"This vital principle announced in Thomas v. Owens, supra, has remained inflexible under every test, and has been accepted for years without a question in nearly every state which has considered the question, as evidenced by the following authorities: People ex rel. Hegwer v. Goodykoontz, 22 Colo. 507, 45 P. 414; State ex rel. Fornoff v. Sargent, 18 N. M. 272, 136 P. 602; State ex rel. Henderson v. Burdick, 4 Wyo. 272, 33 P. 125, 24 L. R. A. 266; State ex rel. Roberts v. Weston, 4 Neb. 216; State ex rel. Brown v. Weston. 6 Neb. 16; Weston, Auditor, v. Herdman, 64 Neb. 24, 89 N. W. 384; Green v. Purnell, 12 Md. 329; Dorman v. Sargent, 20 N. M. 413, 150 P. 1021; Reed v. Huston, 24 Idaho, 26, 132 P. 109, Ann. Cas. 1915A, 1237; State ex rel. Birdzell et al. v. Jorgenson, 25 N. D. 539, 142 N. W. 450, 49 L. R. A. (N. S.) 67; State ex rel. Buck v. Hickman, 10 Mont. 497, 26 P. 386; Carr et al. v. State ex rel. Coetlosquet, 127 Ind. 209, 26 N. E. 778, 11 L. R. A. 370, 22 Am. St. Rep. 624; State ex rel. Buchanan v. Jennings, 68 S. C. 411, 47 S. E. 683; People ex rel. Fulton v. O'Ryan, 71 Colo. 69, 204 P. 86."

See, also, Riley v. Carter, State Auditor, 165 Okla. 262, 25 P. (2d) 666, and the decisions therein cited.

This opinion is delivered "per curiam" for the reason that it has been prepared, after careful consideration of the issues, by the joint efforts of each and every member of the court, and reflects their composite views.

The prayer of the petitioners is granted and the writ is ordered to issue.