Dear Representative Thomas,
¶ 0 The Attorney General has received your letter asking for an official opinion addressing the following question:
Will the Governor's line item veto of the appropriation forthe `Salaries of County Superintendents' in 1989 Oklahoma SessionLaws, chapter 315, 13 result in a reduction in salary forSuperintendents of Schools who were elected prior to May 26,1989?
¶ 1 Section 13 of chapter 315 of the 1989 Oklahoma Session Laws, was passed by the Legislature to provide adequate appropriations to the State Board of Education which is statutorily required to provide salary supplements for County Superintendents of Schools. However, the Governor vetoed this provision[1] and consequently the State Department of Education is without a specific funding source for salary supplements to county school superintendents for fiscal year 1989-90.
¶ 2 The essence of your question is essentially: Will the lack of adequate funding result in reductions of salary for county superintendents of schools?
¶ 3 Our analysis must begin with Article XXIII, Section 10 of the Oklahoma Constitution which provides, in pertinent part:
 Except wherein otherwise provided in this Constitution, in no case shall the salary or emoluments of any public official be changed after his election or appointment, or during his term of office, unless by operation of law enacted prior to such election or appointment; nor shall the term of any public official be extended beyond the period for which he was elected or appointed.
¶ 4 County superintendents are public officials who are not excepted from the provisions of Article XXIII, Section 10. Bassv. Board of Commissioners of Lincoln County, 222 P. 995 (Okla. 1924).
¶ 5 The Oklahoma Supreme Court, in Edwards v. Carter,29 P.2d 610 (Okla. 1934), in addressing a similar factual circumstance wherein the Legislature failed to make an appropriation sufficient to cover the salaries of all Court of Criminal Appeals Judges, stated that Okla. Const. Article XXIII, Section 10:
 constituted a limitation and restriction upon the power of the Legislature. Any attempt, directly or indirectly, by the Legislature to evade the force and effect of that constitutional limitation and restriction is ineffective and void. There is no principle of our government that is better settled than that the salary or emoluments of a public official cannot be changed during his term of office in violation of such a constitutional prohibition. . . . The Legislature is without power to repudiate the pledged faith of the people to its public officers, and any effort on its part to do so is utterly void.
29 P.2d at 611.
¶ 6 In Edwards, the Governor and respondents argued that since the Legislature had failed to appropriate the necessary funding, the salaries must be changed because the Oklahoma Constitution also prohibited the payment of money out of the treasury of the state, or any state funds except in accordance with an appropriation by law. In responding to this argument, the Oklahoma Supreme Court stated:
 If that was the intention of the makers of the Constitution, they have provided a plan by which the provision of the Constitution that the salary or emoluments of a public official may not be changed during his term of office, and the provision of the Constitution that public officers shall receive the salary provided by law, may be defeated by the Legislature failing or refusing to make an appropriation, or by the Governor vetoing such an appropriation with the approval of one-third of the members of either house of the Legislature. When we know the history which led to the including in the Constitution of the provision with reference to the payment of salaries of public officers and the provision prohibiting the changing of such salary or emoluments during the term of office, we must conclude that there was no such intention on the part of the people.
29 P.2d at 612. (Emphasis added).
¶ 7 In Hicks, Carter County Superintendent v. State Board ofEducation, Oklahoma Supreme Court Case No. 69,579 (May 23, 1988), petitioners, all county superintendents, sought a writ of mandamus to compel the State Board of Education to continue their salary supplements. The State Board of Education had refused to supplement the salaries of the petitioners pursuant to 70 O.S. 4103 (1987).[2] The provisions of 70 O.S. 4-103 (1987), limited the State Board of Education supplements to only those superintendents serving counties with three or more dependent school districts. Title 70 O.S. 4-103 (1987) stated:
 Notwithstanding any provisions hereinabove contained to the contrary, the State Board of Education is hereby authorized to apportion to those counties having at least three (3) dependent school districts, from any appropriation provided for the purposes of this Article, an amount equal to the difference between (1) the amount necessary to provide for the county superintendent of schools in each county in the state a salary computed on the basis of the minimum salary of teachers serving as superintendents of schools in school districts, and (2) an amount equal to the salary paid to such county superintendent of schools from county funds of the county of which he, or she, is county superintendent of schools. The State Board of Education shall furnish the Director of State Finance with a copy of the apportionments made for the salary of the county superintendent of each county and upon the submission of claims by the State Board of Education the State Treasurer shall draw a warrant each month for one-twelfth of the total apportionment made to supplement the salary of the county superintendent of schools in each county as herein provided, and such warrants shall be forwarded to the county superintendent of schools by the State Board of Education as soon as they are received from the State Treasurer.
¶ 8 In Hicks, the petitioners asserted that the application of 70 O.S. 4-103 (1987), which imposed the three-county restriction, excluded them from receiving the salary supplements they had previously received because they did not have three dependent school districts in their respective counties, and therefore the application of this act was a change in their salary which was constitutionally prohibited by Article XXIII, Section 10 of the Oklahoma Constitution. The Oklahoma Supreme Court found that Article XXIII, Section 10 of the Oklahoma Constitution entitled the petitioners to relief and prohibited the enforcement of 70 O.S. 4-103 (1987) during the petitioners' terms of office to the extent that it changed the salary or emoluments during their respective terms of office. Inasmuch as Article XXIII, Section 10 of the Oklahoma Constitution prohibits changes in the salary or emoluments of public officials after their election, appointment or during their current terms of office, the salaries of county superintendents will likewise not be changed after the date of their election, appointment or during their current terms of office.
¶ 9 At the time of the Governor's veto of 13, title 70 O.S.4-103 (1988) was in effect and operative, providing for a salary equal to the minimum salary of a teacher serving as a school district superintendent, with the State Board of Education authorized to provide any necessary supplement in addition to the funds provided by the county in order to meet the minimum salary.
¶ 10 It is, therefore, the official opinion of the AttorneyGeneral that Article XXIII, Section 10 of the OklahomaConstitution and 70 O.S. 4-103 (1988) as previouslyinterpreted by the Oklahoma Supreme Court in Hicks, CarterCounty Superintendent v. State Board of Education, prohibit achange in the salary or emoluments of county superintendents ofschools after their election or appointment or during their termsof office notwithstanding the Governor's line item veto of theappropriation which was to provide a major source of funding forthose officials.
ROBERT H. HENRY ATTORNEY GENERAL OF OKLAHOMA
TAMMY M. THOMPSON ASSISTANT ATTORNEY GENERAL
[1] The Governor expressed the following reasons for vetoing § 13, chapter 315, 1989 Okla. Sess. Laws: "In Section 13, the appropriation for county superintendent salaries has been deleted because Section 56 amends current law and requires the state to supplement salaries for county superintendents in counties with fewer than three dependent schools. The position of county superintendent cannot reasonably be justified for these counties."
[2] Title 70 O.S.Supp. 1987, § 4-103[70-4-103] has been amended by 1989 Okla. Sess. Laws, c. 315, § 56, effective July 1, 1989, and reads as follows:
 Notwithstanding any provisions hereinabove contained to the contrary, the State Board of Education is hereby authorized to apportion from any appropriation provided for the purposes of this article, an amount equal to the difference between (1) the amount necessary to salary paid to such county superintendent of schools from county funds of the provide for the county superintendent of schools in each county in the state a salary computed on the basis of the minimum salary of teachers serving as superintendents of schools in school districts, and (2) an amount equal to the salary paid to such county superintendent of schools from county funds of the county of which he, or she, is county superintendent of schools. The State Board of Education shall furnish the Director of State Finance with a copy of the apportionments made for the salary of the county superintendent of each county and upon the submission of claims by the State Board of Education the State Treasurer shall draw a warrant each month for one-twelfth of the total apportionment made to supplement the salary of the county superintendent of schools in each county as herein provided, and such warrants shall be forwarded to the county superintendent of schools by the State Board of Education as soon as they are received from the State Treasurer.