Dear Administrator Jackson,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. Is an increase or decrease in the Employee BenefitAllowance a change in the salary of a public official subject toArticle XXIII, Section 10 of the Oklahoma Constitution, whichprohibits a change in the salary or emoluments of any publicofficial during the official's term of office?
 2. Is the Employee Benefit Allowance an emolument of a publicofficial pursuant to Article XXIII, Section 10 of the OklahomaConstitution?
 3. May the Employee Benefit Allowance of a public officialsubject to Article XXIII, Section 10 of the Oklahoma Constitutionbe increased or decreased during the public official's term ofoffice?
 4. If there is a change of status of a public official who issubject to Article XXIII, Section 10 of the OklahomaConstitution, such as an increase or decrease in dependents, maythe Employee Benefit Allowance of such official be changed toreflect the addition or deletion of dependents?
 5. If public officials subject to Article XXIII, Section 10 ofthe Oklahoma Constitution erroneously received an increase in theEmployee Benefit Allowance pursuant to a statute enacted aftertheir election or appointment, may the State recover such excessallowance from the public officials?
 I. Constitutional Prohibition Of Change In Salary Or Emoluments Of Public Officials
¶ 1 The Oklahoma Constitution prohibits changes in the salaries or emoluments of public officials during their terms of office, as follows:
 Except wherein otherwise provided in this Constitution, in no case shall the salary or emoluments of any public official be changed after his election or appointment, or during his term of office, unless by operation of law enacted prior to such election or appointment[.]
Okla. Const. art. XXIII, § 10.
¶ 2 "There is no principle of our government that is better settled than that the salary or emoluments of a public official cannot be changed during his term of office. . . ." Edwards v.Carter, 29 P.2d 610, 611 (Okla. 1934). The constitutional prohibition applies to public officers with a fixed and definite term of office, not to appointive offices held at the pleasure of the appointing authorities. Meyer v. Clift, 123 P. 1042, 1044
(Okla. 1912).
¶ 3 The "unless" phrase of the provision permits a change in salary during a public officer's term only if the law that operates to increase the salary was enacted prior to the officer's election. State ex rel. Edmondson v. Okla. Corp.Comm'n, 971 P.2d 868, 872 (Okla. 1998). The typical case is where the official's salary was based upon the county population according to the official census; the salary of such official could change during the official's term as a result of the change of population as reflected by a new official census. Barton v.Derryberry, 500 P.2d 281, 282 (Okla. 1972) (holding that district attorneys who assumed office prior to legislation increasing the salary of associate district judges, upon which the district attorneys salaries were based, were not entitled to an increase in salary).
¶ 4 The purpose of the constitutional provision is:
 1) to establish definiteness and certainty in the salary pertaining to an office;
 2) to take from public bodies the power to make gratuitous compensation to officers in addition to that established by law;
 3) to establish the complete independence of the three branches of government;
 4) to prevent office holders from using influence and position to secure salary increases after being elected; and
 5) to insure that pay increases enacted at taxpayers' expense are for the benefit of the office and not a particular elected official.
Presley v. Bd. of County Comm'rs, 981 P.2d 309, 313 (Okla. 1999) (holding that laws prohibiting mid-term pay increases for county officers do not deny elected officials equal protection).
¶ 5 As reflected in the cases cited above, the Oklahoma Supreme Court has addressed the constitutional prohibition to a change in salary during an official's term of office a number of times. However, the question of whether insurance benefits constitute either salary or emoluments has not yet been addressed by an Oklahoma court.[1]
 II. Employee Benefit Allowance
¶ 6 The Oklahoma State Employees Benefits Act, 74 O.S. 2001,§§ 1361-1373[74-1361-1373], provides State employees a flexible benefit allowance to be used for the purchase of benefits for employees and their families. Id. § 1370(A). Each employee is required to purchase health, dental, disability, and life benefits with the allowance. Id. § 1371(A). If an employee elects benefits whose sum total is less than the allowance, the employee receives any excess allowance as taxable compensation. Id. § 1370(F). Elected and appointed officials receive the same benefits as are provided under the flexible benefits program to State employees.Id. § 1362(13).
¶ 7 The flexible benefit allowance was initiated in July 1993 at the rate of $187.19 per month per employee. 1993 Okla. Sess. Laws ch. 221, § 1(B). The allowance only covered the purchase of benefits for employees, although dependent coverage could be purchased from the employee's salary. Id. § 1(C). An additional allowance for dependent coverage was added as an option effective July 1998; an employee could elect to receive either $262.19 per month (for employee only coverage) or $224.69 per month plus an additional fixed amount depending on how many dependents the employee elected to cover ($102.78 for a spouse; $39.12 for one child; $69.99 for two or more children; or any combination thereof). 1998 Okla. Sess. Laws ch. 257, § 3(D). The Legislature subsequently changed the amount allowed for dependent coverage from a fixed amount to an amount based on a percentage, as follows: for the period July 1, 1999 through June 2001, (but effective November 1, 1999) a participant who covered one or more dependents received one-half the average price for all high option benefits for the covered dependent(s) (1999 Okla. Sess. Laws ch. 255, § 7(D)); effective July 1, 2001, the allowance for dependent coverage was increased to 75% of the average price of all high option benefit plans for the covered dependent(s). 2001 Okla. Sess. Laws ch. 213, § 2(C). The 1999 statute resulted in a slight decrease in the dependent allowance for fiscal year 1999, while the 2001 statute provided an increase.[2]
 III. Analysis Of Whether The Employee Benefit Allowance Is "Salary" Or "Emolument"
¶ 8 Your first question is whether an increase or decrease in the benefit allowance is a change in the salary of a public official. Section 10 of Article XXIII of the Oklahoma Constitution applies to the employee benefit allowance only if such allowance constitutes part of the "salary or emoluments" of public officials with fixed terms of office. The goal of construing a constitutional provision is to give effect to the intent of its framers and of the people adopting it. Hines v.Winters, 320 P.2d 1114, 1118 (Okla. 1957). Such intent is to be found in the text of the provision itself; if the wording is "plain, clear and unambiguous, its evident meaning must be accepted." Id.
¶ 9 "Salary" is defined as "fixed compensation paid regularly . . . for services . . . such compensation paid to holders of official, executive, or clerical positions — often distinguished from wage." Webster's Third New International Dictionary 2003 (3d ed. 1993). The salaries of State-wide elected officials are set by statute (74 O.S. 2001, § 250.4[74-250.4]), as are the salaries of district attorneys (19 O.S. 2001, § 215.30[19-215.30] (A)).[3] "The amount of salary as fixed by any statute, . . . is intended by the Legislature to be the maximum salary which each of the respective officers or employees shall receive or be entitled to receive[.]" 74 O.S. 2001, § 283[74-283]. "The salary of a public officer is an incident to his office, and the legal right to receive or enforce payment thereof goes with the legal title to said office." Bd. of County Comm'rs v. Litton, 315 P.2d 239,240 (syllabus ¶ 2) (Okla. 1957).
¶ 10 The flexible benefit allowance is an amount paid to State employees, including elected and appointed officials, in addition to their salaries. One of the stated purposes of the State Employees Benefits Act is to "recognize the service to the state by elected and appointed officials by extending to them the same benefits as are provided under the flexible benefits program to state employees[.]" 74 O.S. 2001, § 1362[74-1362] (13). The Act distinguishes between "salary" and "benefits." Id. § 1362(1) ("the employee benefit needs of individual state employees differ, depending on the age, salary and family status of the employee"). The Employee Benefit Allowance is not part of the salary of a public official, but rather, is a benefit provided to all State officers and employees on an equal basis in addition to their salaries. See A.G. Opin. 99-1 at 9 (insurance benefits paid by the county do not constitute a portion of a county officer's salary).[4] Therefore, an increase or decrease in the Employee Benefit Allowance is not a change in the salary of a public official.
¶ 11 Your next question is whether the benefit allowance constitutes an emolument of a public official. "Emolument" has been defined as "[p]rofit from office, employment, or labor; compensation; fees or salary." Spearman v. Williams,415 P.2d 597, 600 (Okla. 1966) (quoting Webster's New International Dictionary (2d ed.)). Since it has been determined that the allowance is not "salary," the allowance must constitute either "fees" or "profit from office" or "compensation" of a public official in order for it to be considered an "emolument" of the officer. Although "salary" is included within the definition of "emolument," the term "emolument" has a broader meaning than "salary." In Edwards v. Carter, 29 P.2d 610, 611-12 (Okla. 1934), the Court observed that the payment of the salary of public officers at the time provided by law is one of the emoluments of office. Id. (holding that pursuant to Article XXIII, § 10, the salaries of judges in effect at the time of their election must be timely paid even if the legislature fails to make sufficient appropriation for the salaries). Id. at 613.
¶ 12 Spearman considered whether Okla. Const. art. XXIII, §10 was violated by a statute that provided for the payment of a fixed sum to defray legislators' expenses in maintaining their offices and traveling within their legislative districts. In finding no constitutional violation, the Court distinguished between the allowance of personal expenses and the allowance of expenses incurred in the discharge of official duties, as follows:
 It is our conclusion that in the present situation the word" compensation," appearing in Art. 5, Sec. 21,[5] is synonymous with "salary or emolument" in Art. 23, Sec. 10 of the Constitution. We find nothing in these constitutional provisions and terms that negatives or conflicts with the allowance of reasonable expenses incurred in the discharge of official duties. As stated above, it is the allowance of personal expenses that violates the constitutional limitation.
Id. 415 P.2d at 601-02.
 See also A.G. Opin. 83-18 at 33 (Governor's Mansion Account is not personal to the governor but rather is an allowance for expenses incident to the discharge of his official duties and as such is not a salary or emolument within the meaning of ArticleXXIII, Section 10 of the Oklahoma Constitution). The Employee Benefit Allowance is for personal expenses (personal and family health insurance coverage), as opposed to expenses that are incident to the discharge of official duties. Fringe benefits, such as the allowance, are part of an officer's compensation. The officer receives a personal financial benefit from an allowance paid from public funds for the purchase of personal health, dental, disability, and life insurance. The flexible benefit allowance falls within the meaning of "emolument" in that it is a benefit with a fixed dollar value provided to an official as compensation attached to the office in addition to the salary set by statute.
 IV. Increases Or Decreases In The Employee Benefit Allowance
¶ 13 Public officials subject to Okla. Const. art. XXIII, § 10
are entitled to the benefit allowance authorized by the statute in effect at the time they are elected or appointed. The amount of the allowance may neither be increased nor decreased as the result of legislation enacted during the official's term of office. Thus, an official appointed to office in January 1999 would be entitled to $262.19 (if the official elects employee only coverage) or $224.69 and the applicable amounts for dependent coverage. 1998 Okla. Sess. Laws ch. 257, § 3. This officer would be entitled to receive the fixed amounts authorized for dependent coverage under the law in effect in January 1999, but would not be entitled to receive the higher amounts for dependent coverage that went into effect under 2001 Okla. Sess Laws ch. 213, § 2, which was enacted during the officer's term. Likewise, if the Legislature had reduced the allowance in 2001 to $100 per month with no dependent coverage, the official in the example would continue to be entitled to the higher allowance in effect in January 1999 throughout the officer's term, irrespective of the change in law.
¶ 14 The Employee Benefit Allowance of public officials may be increased during their terms of office if such increase was authorized by the allowance statute in effect at the time of their appointment or election. See State ex rel. Macy v. Bd. ofCounty Comm'rs, 986 P.2d 1130, 1139-40 (Okla. 1999) (holding that a public official's salary may be changed during his term of office where the change results from the operation of a statute enacted before that official's election). For example, an official who was appointed to office in December 2001 who elected employee only coverage would be entitled to the greater of $262.19 per month or an amount equal to the sum of the average monthly premiums of the health, dental, disability, and life insurance plans or the amount determined by the Council based on a formula. 74 O.S. 2001, § 1370[74-1370] (C)(1). If during the official's term of office, the allowance amount increased because the sum of the average monthly premiums increased, the official would be entitled to the increased amount because such increase was authorized by the statute in effect when he or she was appointed. This is similar to the situation addressed in Boardof County Commissioners v. Stokes, 247 P.2d 526, 528-29 (Okla. 1952), which held that where salaries of county officials are based upon population and assessed valuation of the county, an increase or decrease in salary brought about solely because of a change in population or valuation does not violate Okla. Const. art. XXIII, § 10. Thus, the flexible benefit allowance may fluctuate up or down during an official's term, but the fluctuation may only be based on the law in effect at the time the officer was elected or appointed and may not be based on legislation changing the allowance during the officer's term.
 V. Effect Of A Change In Status For Dependent Coverage
¶ 15 If there is a change in status of a public official, such as an increase or decrease in dependents, the officer may elect to add or drop dependent coverage if such change is authorized by the statute in effect at the time the officer was elected or appointed. Each participant in the State benefits plan makes an annual election of benefits during the enrollment period held prior to the beginning of each plan year. 74 O.S. 2001, §1371[74-1371] (E).[6] Elections are irrevocable during the plan year unless there has been a change in status, including but not limited to, marriage, divorce, or birth or adoption of a child. OAC 87:10-23-10(a)-(b) (2001). The amount the officer receives as a benefit allowance may be increased or decreased due to the option to add or drop dependent coverage if the allowance is calculated by reference to the statute in effect when the officer was elected or appointed.
¶ 16 As noted previously, since July 1998 employees have had the option of receiving an additional allowance to partially offset the amount charged for dependent coverage under plans offered by the State. 1998 Okla. Sess. Laws ch. 257, § 3(D). Article XXIII, Section 10 of the Oklahoma Constitution would not prevent an officer from changing the amount of the allowance due to increasing or decreasing dependents covered under the plan, but the dependent coverage allowance must be based on the statute in effect at the time of the officer's appointment or election. For example, assume a State officer was appointed to office in January 1999 and elected the "employee only" allowance of $262.19. The officer could later add his/her spouse to the insurance coverage and receive an increased allowance in the amount of $327.47 (comprised of $224.69 for employee plus $102.78 for spouse) because such allowance was authorized by the statute in effect when the officer was appointed. 1998 Okla. Sess. Laws ch. 257, § 3(D)(2). However, when the flexible benefit allowance for dependent coverage increased in July 2001 (2001 Okla. Sess Laws ch. 213, § 2(C)(2)), the officer in the example would not be entitled to the increased amount, but would be limited to the amount authorized at the time of his/her appointment. Thus, the allowance can be increased or decreased due to changes in dependent coverage without violating the constitutional provision as long as the amounts are calculated by reference to the statute in effect when the individual was elected or appointed.
 VI. Recovery Of Overpaid Benefit Allowances
¶ 17 Your final question concerns the recovery of overpayments made as a result of erroneously basing the amount of an official's allowance on a statute enacted after the official's election or appointment. In cases where payments are made in error based on an unconstitutional statute, courts have held the overpayments are not recoverable from the officers who authorized the payments. In Wade v. Board of Commissioners, 17 P.2d 690
(syllabus ¶ 3) (Okla. 1932), the Court held that the board of county commissioners would not be penalized for the payment of salaries to county officers under an unconstitutional local act where the payments were made in good faith and before the law was declared unconstitutional. See also Gordon v. Conner,80 P.2d 322, 324 (Okla. 1938) (holding that sheriff and board of county commissioners would not be penalized for payments of salaries to deputy sheriffs under an unconstitutional local act where the payments were made in good faith and before the law was declared unconstitutional).[7] However, in Wiles v. Board ofCommissioners, 62 P.2d 1182, 1183 (Okla. 1936), the Court held that salary overpayments to a county judge, which were made as a result of a law enacted during the judge's term of office, were recoverable by the county. In finding the judge had no right to receive a greater salary than was fixed by law at the time of his election, the Court observed, "the Oklahoma Constitution, inhibits any change in the salary or emoluments of any public official after his election or appointment, or during his term of office . . . and salary payments made without authority of law may be recovered in a proper proceeding." Id.
¶ 18 Your question relates to overpayments made as a result of increasing the allowance of public officials pursuant to a statute enacted during their terms, a circumstance similar to theWiles case. If officials have been given an increased allowance calculated by reference to a statute enacted during the officials' terms of office in violation of Okla. Const. art. XXIII, § 10, the State would be entitled to recover the difference between the amount provided and the amount authorized under the statute in effect at the time the officials were elected or appointed. Likewise, if the allowance paid to an official was erroneously decreased pursuant to a statute enacted after the official was elected or appointed, the official would be entitled to recover the amount due under the statute in effect at the time of election or appointment. See Edwards,29 P.2d at 610 (syllabus ¶ 2) (where statute fixed salaries for judges at $625 per month and the Legislature only appropriated sufficient funds to pay salaries at the rate of $500 per month, judges were entitled to a writ of mandamus requiring the State treasury to allow their salary claims in the statutory amount).
¶ 19 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The Employee Benefit Allowance does not constitute aportion of the salary of a public official.
 2. The Employee Benefit Allowance is an emolument of a publicofficial subject to Article XXIII, Section 10 of the OklahomaConstitution.
 3. The Employee Benefit Allowance of a public official subjectto Article XXIII, Section 10 of the Oklahoma Constitution may notbe increased or decreased if such increase or decrease is theresult of a statute enacted after the official's election orappointment. The allowance may only be changed in accordance withthe benefit allowance statute in effect when the official waselected or appointed.
 4. If there is a change in status of a public official subjectto Article XXIII, Section 10 of the Oklahoma Constitution, suchas an increase or decrease in the number of dependents, thepublic official may elect to add or drop coverage for suchdependents, but may receive only the amount of the benefitallowance for the additional dependents that was authorized bythe benefit allowance statute in effect at the time the officialwas elected or appointed.
 5. If a public official has received a benefit allowanceexceeding the amount authorized by the statute in effect at thetime the official was elected or appointed, the State may recoverthe excess amount.
W.A. DREW EDMONDSON Attorney General of Oklahoma
KATHRYN BASS Assistant Attorney General
[1] The majority of states that have addressed the issue have found that adding or changing health insurance benefits during an official's term of office is prohibited under similar constitutional provisions in those states. See State ex rel.Parsons v. Ferguson, 348 N.E.2d 692, 694 (Ohio 1976) (changes in fringe benefit payments are within scope of constitutional prohibition); Opinion by the Justices, 30 So.2d 14, 17 (Ala. 1947) (act authorizing insurance benefits creates an increase in compensation and thus officers who have a fixed and unexpired term would not, during such term, be entitled to such benefits); Ill. A.G. Opin. 94-022 (providing health insurance benefits constitutes an increase in salary in violation of the constitutional prohibition); Ohio A.G. Opin. 80-002 (the amount which a public officer is entitled to have expended upon his behalf for medical or life insurance coverage is to be determined by reference to the amount payable on the date his term commences); Wis. A.G. Opin. 7-92 (payment of health insurance premiums is compensation); Wash. A.G. Opin. 1988 No. 29 (health benefits constitute additional compensation); Md. A.G. Opin. 93-001 (government payment of group health insurance benefits is "compensation" that may not be received by Council members until the start of a new term). But see Caldwell County Fiscal Courtv. Paris, 945 S.W.2d 952, 954 (Ky. 1997) (health insurance benefits are not compensation and thus county could discontinue providing benefits for county surveyor during his term of office); Neb. A.G. Opin. 01008 ("compensation" means "salary" and providing health and dental insurance does not constitute part of an officer's salary).
[2] For example, the benefit allowance for "employee plus spouse" has changed over the last four years, as follows: $327.47 (eff. July 1, 1998); $315.09 (eff. July 1, 1999); $331.16 (eff. July 2000); $406.46 (eff. July 2001).
[3] In counties with a population of 400,000 or more, the salary of the district attorney may be supplemented by the county. 19 O.S. 2001, § 215.30[19-215.30] (C)(1).
[4] This Opinion overruled A.G. Opin. 78-224 (to the extent it conflicted with Opin. 99-1), which had determined that ArticleXXIII, § 10 of the Oklahoma Constitution prohibits increases in the percentage of contributions into retirement funds, insurance premiums or social security payments on behalf of public officials during their terms of office. The 1978 Opinion did not distinguish between salary and emolument.
[5] Okla. Const. art. 5, § 21 specified that legislators' compensation would be on a per diem basis plus mileage and prohibited any other compensation.
[6] New employees must choose their benefit plans within thirty days after their date of employment. OAC 87:10-17-3(a) (2001).
[7] The acts at issue in Wade and Gordon were held to be unconstitutional as special or local laws. The cases did not concern excess payments in violation of Okla. Const. art. XXIII, § 10. Both were taxpayer actions for recovery of double the amount of the unconstitutional payments. Wade concerned excess salaries paid to county officers, while Gordon addressed the recovery of salaries paid to two deputy sheriffs on the ground that six deputies were appointed and the general law authorized the appointment of not more than four.