## CITY OF HEALDTON v. BLACKBURN.

No. 22412. Oct. 23, 1934.

Marvin Shilling and John E. McCain, for plaintiff in error.

S. A. George and Thos. H. Vick, for defendant in error.

PER CURIAM. In 1927, the electors of the city of Healdton voted a bond issue in the sum of $65,000, for the purpose of constructing and completing a waterworks system for the city. No question is raised as to the legality of this bond issue. After advertising for bids as required by law, the city entered into a written contract with the plaintiff to drill wells to provide water for the city and to furnish and install the necessary machinery and equipment, including a Diesel engine of not less than 120 H. P., to be used in the operation of said water system. All to be done in accordance with the plans and specifications prepared therefor, and under the direction and supervision of the city engineer. The wells were to be drilled upon land then owned by the city if a sufficient water supply could be produced therefrom, but if not, then the plaintiff was to provide, at his own expense, additional land upon which to drill said wells. The wells to be capable of sup-

plying 250 gallons of water per minute. For all of which the plaintiff was to receive $59,900.

The plaintiff drilled wells upon the land owned by the city, and salt water was encountered. Thereupon, the plaintiff purchased and gave to the city additional land, and drilled water wells thereon, which wells after being tested by the city engineer and a committee of men appointed by the city counsel for that purpose, were accepted by the city as being in full compliance with the terms of the contract.

During the progress of this work the city council decided that an engine of 80 H. P. would be sufficiently large to satisfy their needs, and the plaintiff was instructed to purchase and install an 80 H. P. engine in lieu of the larger sized engine, as provided in the original contract, and the difference in the cost thereof was to be deducted from the $59,900 to be paid to the plaintiff. However, not knowing at that time the exact difference in this cost, the city deducted $2,000 from the amount owing to the plaintiff. It was later found that the actual difference in this cost amounted to $1,595; thus leaving a balance of $405 due the plaintiff on the original contract.

In the meantime, by reason of the change in the location of the wells as above stated, it became necessary to lay additional water lines and provide and install other machinery, appliances, and equipment not specified in the original contract, in order to complete the water system for the city. To cover the additional cost of this extra material and labor necessary to install the same, the city entered into an oral contract with the plaintiff to complete the project and agreed to pay the plaintiff the actual cost thereof, together with the actual costs of said extra labor, plus ten per cent. as profit to the plaintiff.

All of which was to be done and performed under the direction and supervision of the city engineer.

The entire water system was completed by the plaintiff about February, 1928, and upon recommendation of the city engineer and water committee, was accepted by the mayor and council for the city as being in full compliance with said contracts. The city paid to the plaintiff the $59,900 called for by the original contract, less the sum of $405 above mentioned.

The actual costs of the material used and labor employed in carrying out the terms and conditions of the oral contract above mentioned, as determined and approved by the city engineer, was $3,970, which, together with the said $405, still unpaid on the original contract, amounted to the sum of $4,375, claimed by the plaintiff, plus ten per cent., as before stated, which the defendant city refused to pay.

In due time plaintiff commenced his action in the district court of Carter county to recover this amount. A jury was waived and said cause submitted to the court.

Judgment was rendered in favor of the plaintiff.

Motion for new trial was filed and overruled, and the defendant has appealed said cause to this court for review.

For convenience the parties hereto will be referred to as they appeared in the trial court below.

At the request of the defendant, the trial court rendered special findings of facts and conclusions of law, which findings of facts are substantially as above stated. No exceptions were saved by the defendant to either. The defendant, not having excepted to the findings of facts so made by the court, has waived the errors therein, if any there be (Larkin v. Barker, 134 Okla. 46, 272 P. 882; Elsea Bros. v. Killian, 38 Okla. 74, 132 P. 686), for it has been repeatedly held by this court that errors occurring at the trial must be excepted to at the time and presented in a motion for a new trial before they can be considered on appeal.

In the case of Larkin v. Barker, supra, this court said that:

"Special findings of fact were requested by the plaintiff in error and by the court made as provided by section 556, C. O. S. 1921. This section provides that it shall not be necessary for the court to state its findings, except generally, unless one of the parties so request with the view of excepting to the decision of the court upon question of law involved in the trial. Plaintiff in error, not having excepted either to the findings of fact made by the court or to the application of the law thereto, waived the errors, if any made, to the application of the law."

Again in the case of St. Louis Carbonating & Mfg. Co. v. Lookeba State Bank, 59 Okla. 71, 157 P. 1046, it was stated in the body of the opinion as follows:

"No exceptions were reserved to either the findings of fact or conclusions of law, but plaintiff filed a motion for a new trial therein assigning that the decision and judgment of the court is contrary to law. There being no exceptions saved to the find-

ings of fact, there is nothing before us to review except the record proper. The findings of fact stand therefore as conclusive, or as an agreed case, and it is for us to inquire only whether the conclusions of law, upon the findings of fact, were correctly pronounced."

However, notwithstanding the rule of law as above stated, we have carefully examined the case-made and find that the findings of fact as stated by the trial court are sustained by the evidence submitted.

It is the contention of the defendant that the contracts so entered into between the plaintiff and defendant were fraudulently made, in that the plaintiff purposely lowered his bid on the original contract, with the secret understanding and agreement that a subsequent contract would be entered into for an additional sum of money under the guise of additional work, labor, and equipment. This contention is easily disposed of, for the reason that the defendant neither pleads it as a defense nor proves it at the trial. Fraud is a question of fact to be established, and is not presumed. New York Life Ins. Co. v. Carroll, 154 Okla. 244, 7 P. (2d) 440.

It is also contended by the defendant that the contract sued upon was not made in compliance with section 1, chap. 49, S. L. 1925; nor section 4577, C. O. S. 1921 (6411, O. S. 1931); that in the trial of said cause plaintiff failed to comply with chapter 106, S. L. 1925, and that the burden was on the plaintiff to show that at the time said oral contract was entered into, the city had sufficient available funds to cover the additional costs of completing the water system.

We are unable to agree with the defendant in any of these contentions, and will consider them in the order above set out.

Section 1, chap. 49, S. L. 1925, is as follows:

"County and municipal officers and boards of commissioners having authority to purchase supplies, material and equipment and to let contracts for public work, shall submit all purchase orders and contracts to the officer charged with keeping the appropriation and expenditure records of the county or municipality, who shall, if there be an unincumbered balance in the appropriation made for that purpose by the excise board, so certify by signing the purchase order or contract; provided, that no purchase order or contract shall be valid unless within the appropriation as made for that particular and specific purpose and so certified by the officer charged with keeping the appropriation and expenditure records of the county or municipality."

It is argued by counsel for plaintiff that chapter 49, S. L. 1925, is unconstitutional. However, we decline to express an opinion on the constitutionality of this law at this time for the reason that the section above quoted is not applicable to the facts in the case at bar. It will be remembered that bonds had been voted by the electors of the city for the very purpose of constructing and completing a waterworks system for the city of Healdton; that plans and specifications had been prepared showing the kind and character of work to be done and machinery and equipment to be used; that bids had been advertised for; all as required by law. A contract had been entered into by the proper city authorities with the plaintiff to construct and equip said water system, and the contracted cost thereof was less than the amount of bonds voted, and was within the estimated costs as submitted by the city engineer. The section above quoted has reference to the expenditures of general funds of a municipality after an appropriation therefor has been made by the proper authorities and approved by the excise board.

Section 4577, C. O. S. 1921 (6411, O. S. 1931), is as follows:

"Before the city council shall make any contract for building bridges or sidewalks, or for any work on streets, or for any other work or improvement, an estimate of the cost thereof shall be made by the city engineer and submitted to the council, and no contract shall be entered into for any work or improvement for a total price exceeding the aggregate amount of such estimate."

Assuming, but without deciding, that this section is applicable as contended by defendant, the record of this case shows, and the trial court specifically found, that an estimate of the cost of the water system was submitted to the city council by the city engineer, and that the contracts so entered into were within the estimate so submitted.

Defendant argues that plaintiff failed to comply with chapter 106, S. L. 1923. 8361, O. S. 1931. However, the record shows that the financial statement of the city of Healdton was introduced in evidence in the trial of said cause, and that for the purpose of shortening the case-made and saving expenses, a stipulation was agreed upon by counsel and admitted in evidence in lieu of and as a substitute for the financial statement. We have examined the stipulation thus entered into as contained in the record, and hold that it is a substantial compliance with said chapter 106.

The defendant contends that the burden

of proof was on the plaintiff to show that at the time the oral contract was entered into the city had sufficient available funds to cover the costs of the additional improvements contemplated. With this we do not agree. It has been repeatedly held by this court that in an action against a municipality, plaintiff makes out a prima facie case when he proves performance of the contract on his part, and that the debt is unpaid. When this is done the burden shifts to the municipality to show the illegality of the contract. Oklahoma City v. Derr, 109 Okla. 192, 235 P. 218.

In the case of City of Pawhuska v. Dahlstrom, 116 Okla. 21, 243 P. 248, it was held as follows:

"If a plaintiff sued upon a contract for extra work and material furnished a municipal corporation thereunder, and it is not made to appear that the contract, when made, was in excess of the current revenues provided for the fiscal year in which the contract was made, and proves performance in accordance with the contract, he makes a prima facie case, and the burden of proof then rests upon the municipality to prove that the debt was illegally contracted by reason of prior appropriations and disbursements."

Since the record shows and the trial court specifically found that sufficient funds derived from the sale of bonds were on hand at the time the contracts were entered into to cover the cost of the water system, the fact that those funds may have been subsequently consumed for other purposes so that none were left with which to satisfy plaintiff's claim or his contracts, does not render the contracts illegal. School District No. 8 v. Home Lumber Co., 97 Okla. 72, 211 P. 433; Buxton & Skinner Stationery Co. v. Commissioners of Craig Co., 53 Okla. 65, 155 P. 215.

Finding no reversible error in the judgment of the district court, it is affirmed.

The Supreme Court acknowledges the aid of Attorneys W. O. Rittenhouse, Charles G. Watts, and J. F. Brett in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Rittenhouse and approved by Mr. Watts and Mr. Brett, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.