**STATE of Oklahoma, ex rel., DEPARTMENT OF HUMAN SERVICES, Appellant,**

v.

**BOARD OF COUNTY COMMIS-SIONERS OF OKLAHOMA COUNTY, Appellee.**

**75387.**

Court of Appeals of Oklahoma, Division No. 1.

Sept. 10, 1991.

Certiorari Denied June 24, 1992.

Charles Lee Waters, Gen. Counsel and Howard J. Pallotta, Asst. Gen. Counsel, Dept. of Human Services, Oklahoma City, for appellant.

Aletia C. Haynes, Asst. Dist. Atty., Oklahoma City, for appellee.

## MEMORANDUM OPINION

GARRETT, Presiding Judge:

On November 22, 1985, Andrew Clark Schnider (Schnider) was arrested on felony charges. He was imprisoned in the Oklahoma County Jail for want of bail. On December 23, 1985, while in jail and in the custody of the Sheriff, Schnider suffered severe stomach problems. The doctor provided by the County to treat prisoners recommended hospitalization, and, at his recommendation, the Sheriff took Schnider to Oklahoma Memorial Hospital, (OMH) a hospital operated by the Department of Human Services (DHS), for treatment. He remained in OMH until February 11, 1986. On that date the criminal charges were dismissed, but Schnider continued to be hospitalized at OMH. After his discharge from OMH, the criminal charges were refiled.

The total hospital bill was $98,664.15. Schnider's private medical insurance paid $10,385.58, leaving a balance of $88,278.57, which DHS attempted to collect from the Board of County Commissioners of Oklahoma County (County). The County refused to pay the bill. DHS sued the County for the total hospital bill, less the insurance payment. During the course of the action, DHS amended it's petition to include only the costs of care incurred prior to the dismissal of criminal charges less the amount of the insurance payment.

The case was set for trial. On the day the trial was scheduled, February 12, 1990, the Court permitted County's attorneys ten (10) days within which to file a Motion for Summary Judgment.[1]

The County filed it's Motion for Summary Judgment and DHS responded. In the trial court and on appeal, the County, in effect, contends: (1) DHS cannot seek payment from County prior to collection efforts against Schnider; (2) DHS cannot seek payment from County prior to a determination that Schnider is unable to pay; (3) DHS may not collect from County because no implied contract was breached, or even exists; and, (4) a patient who is able to pay is responsible for his own medical care. The trial court sustained County's Motion for Summary Judgment, and entered judgment for County against DHS. The Court did not state any reason for the ruling in the order. There were no findings of fact nor conclusions of law.

DHS appeals and contends the trial court erred in several respects. For reversal, DHS, in effect, contends: (1) under Oklahoma law, the County is required to furnish medical care for prisoners in the custody of the County Sheriff; (2) DHS is not required to exhaust collection efforts against the prisoner before suing the County; (3) a determination of indigency of the prisoner is not required before DHS may sue and collect from the County; and, (4) County is liable to DHS under constitutional and statutory law, and it is immaterial whether a contract, express or implied, exists.

Both parties cite *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983). In this case, the Supreme Court recognized the rule that a local government [there a municipality, here a county], has a constitutional duty to provide medical care for prisoners in it's jail. The Court also held that liability for the payment of this expense is a matter of state law. The Court did observe "... If the governmental entity can obtain medical care needed for a detainee only by paying for it, then it must pay". It

---

1. This was an apparent violation of Rule 13.a, Rules for District Courts of Oklahoma, Title 12 O.S.1981, Ch. 2, App.

is obvious that the County's liability, if any, must be determined by state law.

57 O.S.1981 § 52 provides:

It shall be the duty of the sheriff of each county to provide bed clothing, washing, board and medical care when required, and all necessities for the comfort and welfare of prisoners as specified by the standards promulgated pursuant to Section 192 of Title 74 of the Oklahoma Statutes and he shall be allowed such compensation for services required by the provisions of Sections 41 through 64 of this title, as may be prescribed by the county commissioners.

In *Hillcrest Medical Center v. State*, 675 P.2d 432 (Okl.1983), the Court, *inter alia*, considered § 52, supra, and held:

The county sheriff was under a duty to provide necessary medical treatment for prisoners in its custody and, in the absence of arrangements made by the county or the board of county commissioners for necessary medical services for such prisoners, the county is liable for necessary medical services obtained by the county sheriff in the care of such prisoners.

In *City of Tulsa v. Sisler*, 285 P.2d 422 (Okl.1955), the Court held the City to be liable for the expense of furnishing medical care for prisoners in its jail. The Court said: "The City's liability in this case does not depend on the indigency but the imprisonment of the patients who received medical treatment." The City's argument that the County was liable because the prisoners were indigent [because the County must care for the poor], was rejected.

Under the facts of this case and, considering the above cited authorities, County's liability to DHS was clearly established. Imprisonment is the key. Whether the prisoner was indigent, whether DHS attempted to use collection procedures against the prisoner, and existence or non-existence of a contract, express or implied, are not material to the issue of liability. Whether DHS sometimes provides medical care for poor people is immaterial.

It was error to sustain the Motion for Summary Judgment and to enter judgment for County against DHS. The trial court's judgment is vacated.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

BAILEY and ADAMS, JJ., concur.