2017 OK 49

**ARMOR CORRECTIONAL HEALTH SERVICES INC., a Florida Corporation, Plaintiff/Appellee,**

v.

**The BOARD OF COUNTY COMMISSIONERS OF OKLAHOMA COUNTY, a Subdivision of the State of Oklahoma, Defendant/Appellant.**

No. 115,203

Supreme Court of Oklahoma.

FILED JUNE 13, 2017

Ray Zsciesche and Marc Edwards, PHILLIPS MURRAH P.C., Oklahoma City, Oklahoma for Plaintiff/Appellee,

Susan Loving and Andrew W. Lester, SPENCER FANE LLP, Edmond, Oklahoma, for Defendant/Appellant.

REIF, J.:

¶1 Armor Correctional Health Services, Inc., sued the Board of County Commissioners of Oklahoma County (County) for payment of medical services provided to prisoners and detainees in the Oklahoma County Jail. County admitted that Armor provided the medical services in question pursuant to a contract for the period January 1, 2014 to June 30, 2014, and an extension of this contract for the period July 1, 2014 to June 30, 2015. County did not dispute the accuracy of Armor's monthly invoices for such services and admitted it had not paid some invoices totaling $3,302,297.04.

¶2 Despite these admissions, County argued that judgment could not be entered because Armor had not provided proof of the availability of funds as required by 62 O.S. 2001, §§ 362 [1] and 363 [2]. In reply, Armor argued that the County's obligation to pay for the medical services to the prisoners and detainees was not a claim founded on contract alone that is subject to the provisions of 362 and 363. Armor also argued that the obligation was not "indebtedness" as addressed in Article 10, § 26 [3] of the Oklahoma

1.  Section 362 provides:
    Before final judgment in any suit based on contract, including but not limited to proceedings by the Commissioners of the Land Office to collect deficient payments plus interest and reasonable attorney fees related to bonds or other types of indebtedness guaranteed by the corpus of the permanent school fund for the support of common schools pursuant to Section 10 of this act, shall be rendered against any municipality by any court of any county in the State of Oklahoma, except in proceedings to refund any indebtedness of said municipality, proof shall be made to the court, of the existence, character and amount of the outstanding legal indebtedness of said municipality, which proof shall include a statement compiled by the various officers having custody of the records from which the information required in the statement is taken, under oath, showing the following:
    1. An itemized statement of the bonded indebtedness of said municipality.
    2. An itemized statement of the legal indebtedness of said municipality, exclusive of the bonded indebtedness and the alleged indebtedness proposed to be converted into a judgment.
    3. An itemized statement of the indebtedness proposed to be converted into a judgment, so classified as to show, in separate exhibits, all items of questionable legality, if any, and the reasons of said officer or officers therefor:
    (a.) The appropriations against which each warrant was drawn or claim accrued if in judgment, and if within the limits and purposes thereof as provided by law;
    (b.) The income and revenue provided for the respective years, consisting of taxes levied and the actual collections of "estimated income"; the total warrants issued against the same or the accumulated accruals as the case may be, and the amount, if any, in excess of the total income and revenue of the year;
    (c.) The condition of each fund from which such indebtedness is payable as of the close of the month next preceding the filing of application. Appeals from the judgment of the court shall be allowed as provided by law upon the giving of a bond for cost and damages in such sum as the court shall require; provided, that the county attorney of any county may, without the consent of the board of county commissioners of said county, take an appeal from said judgment on behalf of said county and without bond for costs and damages.

2.  Section 363 provides:
    No judgment shall be rendered against any municipality by any court until the provisions of Section 2 hereof, have been fully complied with. Any judgment rendered in violation of the provisions of this act shall be void and of no effect.

3.  Section 26 of Article 10 states:
    § 26. Indebtedness of political subdivisions—Assent of voters—Annual tax—Computation of amount of indebtedness.
    (a) Except as herein otherwise provided, no county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor, in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount, including existing indebtedness, in the aggregate exceeding five percent (5%) of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness: Provided, that if a school district has an absolute need therefor, such district may, with the assent of three-fifths of the voters thereof voting at an election to be held for that purpose, incur indebtedness to an amount, including existing indebtedness, in the aggregate exceeding five percent (5%) but not exceeding ten percent (10%) of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness, for the purpose of acquiring or improving school sites, constructing, repairing, remodeling or equipping buildings, or acquiring school furniture, fixtures or equipment;

Constitution. Armor asserted the County's obligation to pay the medical services provided to prisoners and detainees was incurred in fulfillment of a governmental function mandated by the Oklahoma Constitution. As such, the County's obligation was exempt from Article 10, § 26 as well as §§ 362 and 363.

¶3 The trial court ruled that Article 10, § 26 did apply, but that Armor's summary judgment materials made a prima facie case of the availability of funds. The trial court concluded that the burden shifted to the County and that the County's excuse of a revenue failure within the Sheriff's budget did not bar payment. In so ruling, the trial judge said "whenever there's a failure of revenue within a particular department the County Commissioners look to their general revenue and do what they need to do in order to compensate vendors who are out there that they have legal obligations to."

¶4 The trial court granted summary judgment to Armor in the amount of $3,302,297.04 and County has appealed. We have retained this appeal for de novo review of the summary judgment and the important constitutional issue presented. *See Wathor v. Mutual Assurance Administrators, Inc.,* 2004 OK 2, ¶4, 87 P.3d 559, 561. Upon

review, we affirm the summary judgment in favor of Armor, albeit for a different reason than given by the trial court.

■ ¶5 Article 17, § 2 of the Oklahoma Constitution established the office of sheriff for each of the seventy-seven counties, and Article 25, § 18 prescribed the duties of that office by reference to and incorporation of the duties of that office under territorial law.[4] *Smartt v. Board of County Commissioners of Craig County,* 1917 OK 590, ¶¶ 3 and 4, 67 Okla. 141, 169 P. 1101, 1101. One such constitutional duty imposed upon a sheriff was "[t]he keeping of prisoners confided to his custody." *Id.* at ¶ 4, 169 P. at 1102. Performance of this and other constitutionally prescribed duties "are made mandatory because necessary for the protection and well-being of the people composing the state." *Id.* at ¶ 6, 169 P. at 1102.

¶6 In the *Smartt* case, this Court held that expenses "incurred in the necessary discharge of his duties imposed ... by the imperative mandate of law, are not within the limitation imposed by section 26, art. 10." *Id.* This Court explained this holding by observing that "[i]n many instances the amount necessary for a proper performance of such duties could not be reasonably foreseen, for

and such assent to such indebtedness shall be deemed to be a sufficient showing of such absolute need, unless otherwise provided by law. Provided further, that if a city or town has an absolute need therefor, such city or town may, with the assent of three-fifths of the voters thereof voting at an election to be held for that purpose, incur indebtedness to an amount, including existing indebtedness, in the aggregate exceeding five percent (5%) but not exceeding ten percent (10%) of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness, and such assent to such indebtedness shall be deemed to be a sufficient showing of such absolute need unless otherwise provided by law. Provided, further, that any county, city, town, school district, or other political corporation, or subdivision of the state, incurring any indebtedness requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty-five (25) years from the time of contracting the same, and pro-

vided further that nothing in this section shall prevent, under such conditions and limitations as shall be prescribed by law, any school district from contracting with:

(1) certificated personnel for periods extending one (1) year beyond the current fiscal year; or
(2) a school superintendent for periods extending more than one (1) year, but not to exceed three (3) years beyond the current fiscal year.

(b) If a county approves an exemption of household goods of the heads of families and livestock employed in support of the family from ad valorem taxation pursuant to the provisions of subsection (b) of Section 6 of this article, the percentage limitations on indebtedness as specified in subsection (a) of this section for political subdivisions or political corporations located in any such county shall be adjusted by multiplying the percentage levels specified in subsection (a) of this section by the millage adjustment factor as specified in subsection (b) of Section 8A of this article.

(c) If approved by the people, the amendment to this section shall become effective January 1, 1993.

4. This provision is now found in Article 30, § 18 of the Oklahoma Constitution.

it is not always possible to tell in advance how much will be required." *Id.* at ¶ 20, 169 P. at 1104.

¶ 7 Financial obligations for the fulfillment of constitutionally mandated functions are termed "compulsory" debts, as distinguished from those based on contract alone. *Board of County Commissioners of Caddo County v. Lawrence*, 1938 OK 173, ¶ 11, 182 Okla. 485, 78 P.2d 669, 671. The appropriation of funding for such obligations occurs by the "force and vigor" of the Oklahoma Constitution, and does not require further fiscal action to be effective, although the better practice is to observe the formal appropriation process. *Edwards v. Carter*, 1934 OK 46, ¶¶ 20–21, 167 Okla. 287, 29 P.2d 610, 613. The only limitation upon either an appropriation or a judgment directing payment for constitutionally mandated functions is that "the items and amounts are reasonable, proper, and necessary to the conduct of the government in accordance with [the pertinent] constitutional provisions." *Little v. County Excise Board of Marshall County*, 1932 OK 833, ¶ 9, 161 Okla. 40, 16 P.2d 1080, 1082.

¶ 8 Nothing in the record suggests that the medical services provided by Armor for the prisoners and detainees in the Oklahoma County Jail were not "reasonable, proper, and necessary." As those services and the charges therefor were in fulfillment of the sheriff's constitutional duty for "the keeping of prisoners confided to his custody," Armor is entitled to a judgment in the amount of $3,302,297.04.

**AFFIRMED**

CONCUR: COMBS, C.J., KAUGER, WATT, WINCHESTER, EDMONDSON, COLBERT, REIF, and WYRICK, JJ.

CONCURS IN JUDGMENT: GURICH, V.C.J. (By separate writing.)

1. Okla. Const. art. 10, § 26.

2. Baylis v. City of Tulsa, 1989 OK 90, ¶ 7, 780 P.2d 686, 688.

Gurich, V.C.J., concurring in judgment:

¶ 1 Although I agree that Armor Correctional Health Services is entitled to judgment in the amount of $3,302,297.04 for medical services it provided to the Oklahoma County Detention Center, I reach that conclusion for a different reason. Article 10, § 26 of the Oklahoma Constitution limits a county's ability to become indebted, and provides in relevant part that:

> [N]o county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose ....[1]

"The purpose behind this constitutional provision is to force cities and municipalities [and counties] to operate on a cash basis, and to prevent indebtedness extending beyond one year." City of Del City v. Fraternal Order of Police, Lodge No. 114, 1993 OK 169, ¶ 5, 869 P.2d 309, 311.

¶ 2 This Court, however, has exempted certain debts from the purview of Art. 10, § 26 if "the indebtedness arises from a claim based on a constitutional governmental function" pursuant to this Court's decision in Smartt v. Board of County Commissioners of Craig County, 1917 OK 590, 67 Okla. 141, 169 P. 1101.[2] However, the Smartt exception, has been "met with a great deal of criticism," and has "caused considerable confusion" since it was decided in 1917. City of Del City, 1993 OK 169, ¶ 19, 869 P.2d at 314. Rightfully, over the last 100 years, the Smartt exception has been "narrowly construed to avoid allowing the exception to swallow the constitutional rule" against indebtedness extending beyond one year.[3]

¶ 3 In Protest of Kansas City Southern Railway Co., 1932 OK 328, 157 Okla. 246, 11 P.2d 500, the Court explained when the Smartt exception should be invoked. In that case, an appropriation had been made for the

3. City of Del City, 1993 OK 169, ¶ 19; 869 P.2d at 314.

performance of a constitutional governmental function, specifically "feeding of prisoners in the county jail and the supplies necessary for the maintenance of the county jail," but such appropriation was insufficient due to unforeseen conditions in revenue collection. The Court stated:

> [W]here a county officer, in good faith, requests an appropriation to be made and where the county taxing officials, in good faith, make an appropriation for the conduct of his office and by reason of unforeseen conditions the appropriation so made is insufficient . . . it is [the officer's] duty to apply to the county taxing officials for a supplemental appropriation for the conduct of his office, *and a supplemental appropriation therefor should be made, although to make it requires the transfer of funds from unexpended appropriations theretofore made for other purposes. In the event that no such supplemental appropriation may be made, then and then only does the rule stated in the 'Smart[t]' Case apply* . . . .[4]

¶ 4 The case now before this Court is distinguishable from Smartt, and thus, we need not invoke the exception in this case. In Smartt, the sheriff sought to recover monies from the Board of County Commissioners for expenses incurred for boarding prisoners. The commissioners denied the Sheriff's request because the county's revenue fund had "been exhausted prior to the accrual or presentation" of the sheriff's claim.[5] In other words, in Smartt, the county actually had no funds to reimburse the sheriff. In this case, the record makes clear that Oklahoma County withheld payment to Armor Correctional Health Services not because it lacked the funds to do so. Rather, the County withheld

payment after being advised to do so by the District Attorney.[6]

¶ 5 The record reveals that on January 22, 2014, Oklahoma County entered into an Inmate Health Care Services Agreement with Armor Correctional Health Services (Armor) under which Armor provided designated health-related services for inmates of the Oklahoma County Detention Center. On June 25, 2014, the County extended the Agreement for an additional year, effective July 1, 2014, through June 30, 2015 (FY 2014–2015).[7] Under such contract, Armor was to be paid a base compensation, in equal installments in the amount of $7,360,638.82. In addition, Armor was entitled to invoice the County for costs incurred by Armor over and above an aggregate limit of $1,050,000.00 for hospitalization, off-site, and on-site specialty services, emergency transportation services, and pharmacy costs.

¶ 6 The Armor contract was *fully appropriated* by the County for FY 2014–2015 and was to be paid in part from the Sheriff's Special Revenue Fund and in part from the County's General Revenue Fund. Armor performed all duties and responsibilities as required under the contract, and until February of 2015, the County paid all invoices submitted to it by Armor for services provided by Armor under the contract.[8] Due to unforeseen circumstances, the Sheriff's Special Revenue Fund had a revenue failure during FY 2014–2015, and Armor stopped receiving payments from the County. When certain county officials became aware that Armor invoices were not being paid, "members of the Budget Board began looking at ways to amend the County Budget to make a supplemental appropriation using available funds of the County to pay the balance due on the contract."[9] However, the District At-

---

4. Protest of Kansas City Southern Ry. Co., 1932 OK 328, ¶ 31, 11 P.2d at 509–10 (emphasis added).

5. Smartt, 1917 OK 590, ¶ 1, 169 P. at 1101.

6. In fact, Armor did not plead the Smartt exception. Armor treated this case as a breach of contract case, submitting materials providing proof the County had funds on hand to pay Armor's invoices.

7. The Extended Agreement incorporated the terms of the original Agreement with the base compensation being increased by 2.5% pursuant to the terms of the original Agreement.

8. Beginning in March of 2015, the County stopped paying Armor's invoices for both base compensation and costs incurred by Armor in excess of the aggregate limit, accumulating a balance of more than $3 million dollars.

9. Record on Accelerated Appeal, Ex. E at 2.

torney advised the County to continue to withhold payment, citing Art. 10, § 26 of the Oklahoma Constitution. Armor then sued for breach of contract in the District Court of Oklahoma County to recover payment.[10]

¶ 7 A contract claim against a County is specifically governed by 62 O.S. 2011 § 362-363. Section 362 provides:

Before final judgment in *any suit based on contract*, including but not limited to proceedings by the Commissioners of the Land Office to collect deficient payments plus interest and reasonable attorney fees related to bonds or other types of indebtedness guaranteed by the corpus of the permanent school fund for the support of common schools pursuant to Section 10 of this act, shall be rendered against any municipality by any court of any county in the State of Oklahoma, except in proceedings to refund any indebtedness of said municipality, *proof shall be made to the court, of the existence, character and amount of the outstanding legal indebtedness of said municipality, which proof shall include a statement compiled by the various officers having custody of the records from which the information required in the statement is taken, under oath, showing the following*:

1. An itemized statement of the bonded indebtedness of said municipality.

2. An itemized statement of the legal indebtedness of said municipality, exclusive of the bonded indebtedness and the alleged indebtedness proposed to be converted into a judgment.

3. An itemized statement of the indebtedness proposed to be converted into a judgment, so classified as to show, in separate exhibits, all items of questionable legality, if any, and the reasons of said officer or officers therefor:

(a.) The appropriations against which each warrant was drawn or claim accrued if in judgment, and if within the limits and purposes thereof as provided by law;

(b.) The income and revenue provided for the respective years, consisting of taxes levied and the actual collections of "estimated income"; the total warrants issued against the same or the accumulated accruals as the case may be, and the amount, if any, in excess of the total income and revenue of the year;

(c.) The condition of each fund from which such indebtedness is payable as of the close of the month next preceding the filing of application.

Appeals from the judgment of the court shall be allowed as provided by law upon the giving of a bond for cost and damages in such sum as the court shall require; provided, that the county attorney of any county may, without the consent of the board of county commissioners of said county, take an appeal from said judgment on behalf of said county and without bond for costs and damages.[11]

Section 363 provides that:

No judgment shall be rendered against any municipality by any court until the provisions of Section 2 hereof, have been fully complied with. Any judgment rendered in violation of the provisions of this act shall be void and of no effect.[12]

¶ 8 Sections 362 and 363 exist to avoid collusion among contractors and county officials, and in a contract action against a county, the party seeking judgment against the county must provide the requisite proof under 362 before a judgment can be rendered against the County. See Okla. City v. Green Constr. Co., 1938 OK 510, ¶¶ 5-9, 184 Okla. 98, 84 P.2d 623, 624. A county attorney may not agree to a judgment against a county, and the County must put forth a good faith defense to the contract action to ensure no fraud upon the county and its taxpayers has taken place. Choctaw Cnty. Excise Bd. v. St. Louis–San Francisco Ry. Co., 1969 OK 110, ¶ 5, 456 P.2d 545, 547. In fact, this Court has held that §§ 362 and 363 of Title 62 "function as *jurisdictional predicates* 'to govern the

---

**10.** The District Attorney recused, so private counsel was hired to represent the County in this litigation.

**11.** 62 O.S. 2011 § 362 (emphasis added). Section 361(C) of Title 62 defines municipality to include a county. 62 O.S. 2011 § 361(C).

**12.** 62 O.S. 2011 § 363.

expenditures within the limits set by [Article 10, Section 26 of] the [Oklahoma] Constitution.'" Baylis, 1989 OK 90, ¶ 5, 780 P.2d at 687 (emphasis added). *Failure to prove the requisite facts pursuant to § 362 is a "jurisdictional defect" that subjects a judgment to being declared void.[13]*

¶ 9 In the case before us, Armor presented to the trial court an "itemized statement of the bonded indebtedness" of the County, and an "itemized statement of the legal indebtedness" of the County for the FY 2014–2015 pursuant to § 362(1)-(2).[14] Pursuant to § 362(3), Armor submitted invoices for each month describing the "indebtedness proposed to be converted into a judgment," and the County has not alleged any "items of questionable legality." In fact, the record is clear that the County entered into a legal, binding contract for medical services with Armor and Armor performed all duties and responsibilities as required under the contract.[15] Pursuant to § 362(3)(a), Armor presented evidence that the Sheriff requested the Armor contract be fully appropriated, and that the adopted budget for the Sheriff's Department for FY 2014–2015 did in fact fully appropriate the Armor contract for FY 2014–2015 through maintenance and operations funds from both the General Revenue Fund for the County and the Sheriff's Special Revenue Fund.[16]

¶ 10 Pursuant to § 362(3)(b), Armor provided the approved budget for the County for FY 2014–2015, which provides the "income and revenue provided for the respective years, consisting of taxes levied and the actual collections of 'estimated income'" for the County, and also provides "the total warrants issued against the same or the accumulated accruals as the case may be, and the amount, if any, in excess of the total income and revenue of the year." Pursuant to § 362(3)(c), Armor submitted each invoice along with a daily report from the Treasurer's office on the date such invoices were due establishing that at the time those invoices were presented, the County had funds available in the General Revenue Fund to pay those invoices.

¶ 11 In addition, Armor presented evidence that estimated expenditures for the Sheriff's Department did not exceed approved estimated revenues in the budget approved by the County.[17] The trial court also pointed out affidavits in the record put forth by Armor from the County Clerk for Oklahoma County:

> The Court: "You've got affidavits from Caudill that shows at the time the contract was extended that there was sufficient monies to pay for the contract. And you've also shown at the end of the time that there was sufficient monies to pay for the contract. In fact, have you not shown that during the entire operation of the contract there was sufficient monies?
>
> A: We have, Your honor.[18]

¶ 12 The trial court found that Armor had presented a prima facie case of the availability of funds to pay the invoices under § 362 and that the burden then "shift[ed] to the County to show that [the funds] [were] encumbered. That [the funds] [weren't] avail-

---

13. Baylis, 1989 OK 90, ¶ 5, 780 P.2d at 687. In addition, in Baylis the Court said that "the question of jurisdiction is an issue which is primary and fundamental in each case [and] this Court must inquire into its own jurisdiction as well as to the jurisdiction of the court from which the appeal is taken ...." Id., ¶ 6, 780 P.2d at 688.

14. Record on Accelerated Appeal, Ex. D, Ex. 38 (Oklahoma County, Oklahoma Comprehensive Annual Financial Report for Fiscal Year Ended June 30, 2015, at 26).

15. See City of Healdton v. Blackburn, 1934 OK 573, 169 Okla. 357, 37 P.2d 311 (finding that sufficient funds derived from the sale of bonds were on hand at the time the contracts were entered into to cover the cost of the water system; so *the fact that those funds may have been subsequently consumed for other purposes, so that none were left with which to satisfy plaintiff's claim or his contracts, did not render the contracts illegal*).

16. The trial court allowed the parties to submit additional briefs after the hearing on summary judgment. Armor submitted an "Offer of Proof," which had attached to it the Sheriff's proposed budget for FY 2014–2015 and the budget actually adopted by the County. See Supplement to Record on Accelerated Appeal.

17. Supplement to Record on Accelerated Appeal, Ex. 3.

18. Record on Accelerated Appeal, Ex. K at 18.

able."[19] The only evidence the County presented in response was that the Sheriff's Special Revenue Fund had a revenue failure. The County presented no evidence with regard to whether the Sheriff requested a supplemental appropriation, but the record makes clear the County had money on hand to pay the Armor invoices as they came due and could have transferred funds from appropriations made for other purposes pursuant to Protest of Kansas City Southern Railway Co., 1932 OK 328, 157 Okla. 246, 11 P.2d 500.

¶ 13 Certain necessary fundamental governmental functions "must always be actively exercised in order to preserve the existence of the state and secure to the people the rights guaranteed to them . . . ." Baylis, 1989 OK 90, ¶ 8, 780 P.2d at 688. "[C]onservation of the public peace, health, and safety," "the administration of justice in the courts," and "the maintenance of a public school system" are among the constitutional functions of government that are "elementary and indestructible,"[20] and this Court has held that indebtedness arising from claims based on such constitutional governmental functions is "not subject to the debt limitation provisions of Article 10, Section 26 of the Oklahoma Constitution." Baylis, 1989 OK 90, ¶ 7, 780 P.2d at 688 (citing Smartt, 1917 OK 590, 169 P. 1101).

¶ 14 But we need not invoke the Smartt exception under the facts of this case. The Smartt exception should be construed narrowly so as not to thwart the clear purpose of Art. 10, § 26, which is to safeguard the citizens and taxpayers of the county from "the inadvertence, carelessness, [or] the corruption of public officials charged with the handling of public monies."[21] In accordance with Protest of Kansas City Southern Railway Co., 1932 OK 328, 157 Okla. 246, 11 P.2d 500, constitutionally mandated governmental functions should be fully appropriated and should take priority in budgeting expenditures. Obligations to service providers who contract with the county to carry out such functions should be paid in advance of other obligations not considered constitutionally mandated.[22]

¶ 15 That said, the record in this case makes clear that the County did in fact fully appropriate the Armor contract to provide medical care to inmates and had funds on hand to pay Armor's invoices as they came due. When the County withheld payment to Armor, Armor's recourse was to sue for breach of contract, which is governed by 62 O.S. 2011 § 362–363. Section 362 specifically provides a mechanism to ensure counties operate within the confines of Art. 10, § 26 when creating contractual obligations. Armor presented the proof required under § 362 to render a valid judgment against the County in this case, and the trial court's decision should be affirmed.

---

19. Record on Accelerated Appeal, Ex. K at 34.

20. Smartt, 1917 OK 590, ¶ 20, 169 P. at 1104.

21. City of Del City, 1993 OK 169, ¶¶ 37–38, 869 P.2d at 318 (citing Boardman v. Bd. of Cnty. Comm'rs, 1929 OK 10, 136 Okla. 85, 276 P. 474).

22. "[T]he duty of providing medical care to prisoners [is] well established by both Oklahoma statutory law and federal law as well as by state jurisprudence." HCA Health Servs. of Okla. Inc. v. Whetsel, 2007 OK 101, ¶ 7, 173 P.3d 1203, 1205 (citing 57 O.S. 2001 § 52; 19 O.S. 2001 § 746; State ex rel. Dep't of Human Servs. v. Bd. of Cnty. Comm'rs of McClain Cnty., 1992 OK 29, 829 P.2d 961; State ex rel. Dep't of Human Servs. v. Bd. of Cnty. Comm'rs of Okla. Cnty., 1991 OK CIV APP 86, 831 P.2d 1006; City of Tulsa v. Hillcrest Med. Ctr., 1956 OK 21, 292 P.2d 430).